In the Matter of taking a Right and Easement in Certain Property for the Construction of a Sewer in the City of Yonkers.

*It seems* proceedings on behalf of a municipal corporation, nominally to acquire an easement in lands of an individual for the purpose of constructing a sewer, are inappropriate to try the title to the lands affected, or to determine, as between the municipality and the individual, the question as to whether the former has an existing right to the easement; nor is the proceeding appropriate, if the land affected is a public street, to investigate the question as to any special damage an adjacent landowner may have sustained by the construction of the sewer.

*It seems* when land is taken or dedicated for use as a public street it is part of the purpose in view that it shall be used not only for passage, but for all such incidental purposes, including the building of sewers, as may be necessary, appropriate and usual for the proper enjoyment of such street.

In proceedings in behalf of the city of Yonkers to acquire an easement in lands, described as the property of L., for the purpose of constructing a sewer thereon, it appeared that the H. R. R. R Co., under authority from the state, built a solid embankment in the Hudson river, on the easterly shore of which said city is located, running along the city front and about three hundred and fifty feet west of the original shore line; this embankment was a solid substantial structure which cut off the old shore line east of it from all access to and from the river. Prior to 1856 W. avenue in said city was laid out from a point some distance east of the old high-water line to a point one foot east of said embankment; which was three feet higher than the grade established for the street. The land between the embankment and the old shore line was filled in and the avenue opened to the point specified. In 1869 one F., under whom L. claimed, obtained a grant from the state of lands under water lying westerly of the said embankment; he filled in the lands so acquired for a distance of two hundred and forty-five feet west of the embankment, and dedicated as a public highway a strip of land of the width of W. avenue, continuing it to "a point in land under water of the Hudson river five feet westerly of the westerly line" of said embankment, subject to the rights of the railroad company. The dedication was accepted by the city. Subsequently F. and his grantees filled in all the lands described in his patent and have used them for their private business purposes, with the exception of the part dedicated. This was graded up so as to permit a crossing of the embankment, and the avenue was extended over the land dedicated. The easement sought to be acquired was over the made land, west of the land so dedicated, to the river. The court below refused to allow damages on the ground that the avenue extended to the river; and as, therefore, the land, an easement in which was sought to be taken, was already a city street, the city had the right to construct the sewer. *Held*, untenable; that the effect of the construction of the embankment was to make its westerly line a new shore line; and that, therefore, although the said avenue was laid out to a point west of the original shore line, it did not extend to the river, and the dedication did not so extend it or give the city any right in the land west of the limits of the dedication.

*People* v. *Lambier* (5 Den. 9) distinguished.

(Argued December 9, 1889; decided January 14, 1890.)

APPEAL by William F. Lawrence, as land-owner, from an order of the General Term of the Supreme Court in the

second judicial department, made May 16, 1889, which affirmed an order of Special Term, confirming a report of commissioners appointed in this proceeding to condemn property, awarding to the land-owner $175.

Upon this appeal the appellant, having so stated in his notice of appeal, sought to review certain prior orders of the Supreme Court at Special and General Terms, refusing to confirm a former report of the same commissioners and sending the case back to them for further proceedings in conformity with the opinion of the court.

The following is a history of the proceedings : The board of water commissioners of the city of Yonkers, by resolution, duly recommended the common council " to take the right and easement of a strip of land through the property of W. F. Lawrence, * * * the same being necessary and requisite for the construction, maintenance and repair of a part of a sewer in North Broadway, from Ashburton avenue to the Hudson river." The board then added a " description of the land, the right of way and easement in which is necessary and requisite for the construction, maintenance and repair " of such sewer. The description covers the *locus in quo*, and the whole language of the board is an assertion of ownership of the land by Lawrence and a necessity of the taking of an easement therein by the city. The common council on the 1st of November, 1887, adopted a preamble and resolution, and in such preamble the action of the board of water commissioners was recited and the description of the land necessary to be taken was repeated in the same language as in the resolution of the water commissioners, and it was thereupon

" *Resolved*, That the said improvement be and the same is hereby allowed to be made, and that the right and easement recommended by the board of water commissioners in the strip or parcel of land described above, be taken and that application be made on behalf of the common council to the Supreme Court at a Special Term * * * for the appointment of three persons as commissioners to estimate and assess the expense of taking a right and easement in certain property

for the construction, maintenance and repair of a sewer in North Broadway and Wells avenue, from Ashburton avenue to the Hudson river, and the amount of damages to be sustained and benefits to be derived therefrom by the owners of lands and buildings affected thereby."

Upon subsequent application to the Supreme Court an order was made, on motion of the attorney for the city of Yonkers, in which was recited the action of the water commissioners and that of the common council concerning the necessity of taking the right or easement for the purpose already stated, and three commissioners were in and by such order appointed " to estimate and assess the expenses of taking such right or easement in land required for the said sewer in the city of Yonkers, and the amount of damages to be sustained and benefit to be derived therefrom by the owners of land and buildings affected thereby." Meetings of the commissioners were had and evidence taken as to the value of this easement. The commissioners subsequently made a report which gave to Mr. Lawrence, as the value of the easement to be taken in his land, some $9,000 A motion was made to confirm the same by the city authorities, which motion is, under the charter of the city, a formal one to be made by the city. But, upon the motion to confirm, counsel for owners of property liable to be assessed for the expenses appeared and opposed confirmation. The Special Term refused to confirm the report on the ground that the city was already the owner of the easement, which the proceedings on its part were taken to condemn, because Wells avenue, which was a street in such city, already extended to the Hudson river, and over that very part of the land of Lawrence in which it was proposed to lay the sewer; and the laying of the sewer was, therefore, nothing but the exercise of the undoubted right which the city had to perform such work in the public streets of the city. The proceedings were, therefore, remitted to the same commissioners to make a report in conformity with the views of the court as thus expressed. The land-owner appealed from the order to the General Term where it was affirmed. The proceedings were

then continued before the commissioners, and acting under the directions of the Supreme Court they awarded the land-owner $175 damages, which it is agreed on both sides has been given him because of the inconvenience to his business, as an adjoining owner, in the way of getting on and off his land while the building of the sewer is under way. This report was confirmed by the Special Term.

Whether Wells avenue extends through the lands of Lawrence, as decided by the courts below, depends upon certain facts which it is claimed are substantially uncontra-dicted, and which appear to be as follows:

In 1840 there was quite a bay at Yonkers, reaching north and south of the then village lines. Previous to that time and under the authority of letters-patent from the state, a mole or pier had been built several hundred feet south of the south line of Wells avenue, if extended westerly, as claimed, and this mole was built out into the river about seven hundred feet, and was built in such a solid and substantial manner, of timber, rock and earth, that the waters of the river could not flow through it. Afterwards, and some time between 1845 and 1848, the Hudson River Railroad Company, under due authority from the state, built a solid embankment of twenty or twenty-five feet in width, from the northern headland of this bay right through, upon and across the waters of the Hudson river, down to the mole above described, and which it intersected. This embankment was about three hundred and fifty feet west of the original shore line of the river, and it was a solid and substantial structure, through which the waters of the river could not flow, except that at a point about one hundred feet north of the north line of Wells avenue, as assumed to exist, a culvert was built through such embankment of about four feet in width, so as to permit the tide to ebb and flow through it. The effect of these embankments was to cut off all the old shore line of the river east of the railroad embankment, and to form a new shore line west of the same. The culvert for the ebb and flow of the tide was not a highway, and did not establish any means of high-

way communication between the old shore line and the new. Prior to 1856 filling in was done to some slight extent within this small tract of water left by the building of these embankments, and in that year. Wells avenue was extended and laid out from Broadway (which was some distance east of the old high-water mark line) to a point one foot east of the Hudson River Railroad embankment above described. This point was west of the high-water mark of the old shore as it existed before the building of this embankment. Wells avenue had never reached the old high-water mark until years after the shore line had been, in fact, removed by the building of these embankments. The railroad embankment was three feet higher than the grade established for the extension of Wells avenue. It does not distinctly appear when it was done, but it may be assumed that Wells avenue was opened to that point one foot east of the railroad embankment, and the land was filled in and graded before the year 1869. In that year one George Frazier, under whom the appellant Lawrence claims, obtained a grant from the People of the state of certain land under water, which grant included the land in which the easement in question is concerned. Prior to the grant from the People, Frazier had filled in some of the land west of the railroad embankment, enough to permit teams to go on and turn around on it, and it extended from forty to sixty feet west of the railroad along the north line of the extension of Wells avenue, as claimed, and for a greater distance south than the width of such street. This filling in had continued subsequent to the grant from the People, so that by the 1st of August, 1870, the land had been filled in for a distance of two hundred and forty-five feet from the west line of the railroad embankment, and the water of the Hudson river was, consequently, that distance from such west line. On the 1st of August, 1870, Frazier and the Stewarts, who were also grantees of the People of certain other lands under water adjoining on the south those granted to Frazier, by a written instrument dedicated the land therein described to be forever thereafter used as a public

SICKELS — VOL. LXXII.　72

street. The land, as described in such deed of dedication, commenced "at the westerly end of Wells avenue, as heretofore laid out, on the northerly side thereof, thence running westerly on a line of continuation of the northerly line of said avenue to a point, in land under water of the Hudson river, five feet westerly of the westerly line of" the Hudson River Railroad embankment above referred to. The land was further described so as to make it of the width of Wells avenue. The description in the deed, it will be seen, continues the street to a "point in land *under water* of the Hudson river five feet westerly of the westerly line" of the embankment. In truth, at that time and for months before, there was no land under water at that point, in the sense in which such language is used in grants from the People, for there had already been filled in an amount of land which carried the water line two hundred and forty-five feet west of the west line of such embankment. This dedication, however, only reached five feet west of the embankment, and was made, in terms, subject to all the rights and privileges in and to said premises or any part thereof which the Hudson River Railroad may have acquired under its charter. The city accepted such dedication by a resolution adopted September 5, 1870. Frazier or his grantees have filled in the whole of the land under water described in the patent from the People; and the land-owner, Mr. Lawrence, has for years used all of it for his own private and business purposes, with the exception of the part dedicated to the city. That portion has been so far graded as to permit of a crossing of the embankment upon which the Hudson River Railroad Company have laid their tracks, and Wells avenue has been indisputably extended thus far.

*Ralph E. Prime* for appellant. The proceeding was improperly used to try title. ( *Wilcox* v. *Oakland*, 49 Cal. 29.) Mr. Lawrence holds his property under the terms of a patent, a grant, a deed from the People of the State: (*Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *Stevens* v. *R. R. Co.*, 34 N. J. L.

532; *Bell* v. *Gough*, 3 Zab. 624; *Sissons* v. *Cummings*, 35 Hun, 22; *People* v. *Kerr*, 27 N. Y. 188; *People ex rel.* v. *Town Auditor*, 74 id. 310, 315; *Hoboken* v. *P. R. R. Co.*, 124 U. S. 655. The whole proceeding is irregular and void for failure from beginning to end to state or show what is the right or easement to be taken. (Laws 1886, chap. 557, § 3; Laws 1881, chap. 184, title 7, § 6.) The city of Yonkers did not so appeal, and hence had no standing to be heard in any court or place against the first report. (Laws of 1882. chap. 211, title 7, § 10.) Neither the city of Yonkers nor any of the assessment payers can raise any question of title or be heard in this proceeding to attack the title of Mr. Lawrence. (Lewis on Eminent Domain, § 441; Mills on Eminent Domain, § 161; *Mt. Sterling* v. *Givens*, 17 Ill. 255; *Peoria R. Co.* v. *Bryant*, 57 id. 473; *M. C. R. Co.* v. *C. W. R. R. Co.*, 87 id. 317; *Auditor* v. *Crise*, 20 Ark. 540; *Peoria, etc., R. R. Co.* v. *Laurie*, 63 Ill. 264; *Wright* v. *W. R. R. Co.*, 20 Wis. 341; *St. Jose* v. *Reed*, 65 Cal. 341; *Conners* v. *Bisby*, 37 Kan. 253.) The persons from whom no land or property is taken, had no standing in this proceeding to be heard against the awards in the first report. (*In re Broadway Widening*, 63 Barb. 572, 595; *Doolittle* v. *Supervisors*, 18 N. Y. 155; *Embury* v. *Conners*, 3 id. 523.)

*Joseph F. Daly* for respondent. The order appealed from is not reviewable by this court and the appeal must be dismissed. (*In re P. P. & C. O. R. R. Co.*, 85 N. Y. 489, 499; Laws of 1881, chap. 184, §§ 10, 11.) The public having once acquired the right to reach the river by means of a public highway, the highway is extended over the filled-in land to the waters of the river. (*People* v. *Lambier*, 5 Denio, 9; *Whetmore* v. *A. W. L. Co.*, 37 Barb. 70, 95; *In re City of Brooklyn*, 73 N. Y. 179; *Steers* v. *City of Brooklyn*, 101 id. 51, 56.) The proprietor of the water grant who filled in and made land opposite the terminus of Wells avenue, acquired title to the land so made, subject to the existing easement and right of way of the public to the river front as

·extended. (*People* v. *Lambier*, 5 Denio, 9 ; *Steers* v. *City of Brooklyn*, 101 N. Y. 51, 56 ; *Jersey City* v. *Morris Canal*, 1 Beasley, 547 ; *Barclay* v. *Howell*, 6 Pet. 498 ; *M. C. Co.* v. *Haight*, 36 N. J. Law, 471.) The filling in being unauthorized, so far as it was destructive of the public easement, mere lapse of time does not affect the public right. So far as it was a physical obstruction it could have been removed by the proper authorities. (*In re Brooklyn*, 73 N. Y. 179 ; *Driggs* v. *Phillips*, 103 id. 77 ; *Cook* v. *Harris*, ·61 id. 448 ; *Bridges* v. *Wyckoff*, 67 id. 130 ; *S. V. O. Asylum* v. *Troy*, 76 id. 108.) Where the commissioners adopt the ·correct legal rule the court will not interfere with the amount .awarded in accordance with the correct legal principle adopted. (*In re William Street*, 19 Wend. 679 ; *In re Mayor, etc.*, 99 N. Y. 569.) The position taken by the appellants below, that the proceeding by commission was not the proper remedy, is not sound. (*In re City of Brooklyn*, 73 N. Y. 179.)

PECKHAM, J. These proceedings are entirely inappropriate for the purpose of trying the question of title to the property in controversy, or for testing the right of the city to an easement in the land for the purpose of building the sewer referred to herein. The city authorities have ·.ssumed, from the commencement, so far as the record shows, that the appellant was the owner of the land in question, and that it was the intention of the city, through these proceedings, to take from him a right or easement in the land for the purpose of the construction, maintenance and repair of this sewer. That was the statement made by the water commissioners when they first inaugurated the proceeding. It was recited and ·concurred in by the common council when, assuming to carry ·out the recommendation of the water commissioners, it adopted the resolution directing the commencement of this proceeding. The resolution of the common council recited the action of the water commissioners, and resolved that the improvement ·spoken of by that board should be allowed to be made, and ·that the right and easement recommended by the water com-

missioners in the strip or parcel of land described by it should be taken, and directed application therefor to be made to the Supreme Court. The order of the Supreme Court, after reciting the action of the water commissioners and of the common council, and upon the motion of the attorney for the city of Yonkers, appointed commissioners to estimate and assess the expenses of taking the right or easement in the land required for the said sewer. Not only the nature of the proceedings themselves, but this action of the commissioners, the council and the court, was all founded upon the assumption of the ownership of this right on the part of Mr. Lawrence, and that it was necessary to be taken for public purposes and to be paid for by the parties interested therein. Such a. proceeding is not the proper one for the purpose of testing the title to the land which is proposed to be taken, as between the public body and the individual against whom the proceedings are commenced.

If the land in question be as claimed — a public street in the city of Yonkers — then that city has the right, as an incident to its jurisdiction over its streets and highways, to lay down a sewer therein in accordance with its by-laws and regulations. To put a sewer in a public street in a city is simply to use the street in a manner which is necessarily incident to the use for which streets are opened and laid out in cities. It is a part of the purpose in view when land is taken or dedicated for use as a public street in a city, that it shall be used not only for the purposes of mere passage and repassage, but for all such incidental purposes, including the building of sewers therein, as may be necessary, appropriate and usual for the proper enjoyment of such street. (See *Kelsey* v. *King*, 32 Barb. 410; 2 Dillon on Mun. Corp. [3d ed.] § 688, and note; 1st ed. § 544; *City of Boston* v. *Richardson*, 13 Allen, 146-159; *City of Cincinnati* v. *White*, 6 Peters, 431; *Warren* v. *City of Grand Haven*, 30 Mich. 24-28.)

If this were a public street at the point in question, then this is an entirely inappropriate proceeding to investigate any special damage that the land-owner of adjacent property may

be subjected to by the digging up of the public street and laying the sewer therein by the public authorities. His property is not taken nor is any new easement therein taken from him and, therefore, no necessity exists for the institution of any such proceeding, and its institution in a case where the city denies the existence of any right or title in the assumed owner, is improper and should not be permitted. But, upon the facts in this case, we think the learned courts below have fallen into an error in holding that the land-owner has no easement to be taken. That error is one of fact based upon the assumption that the western termination of Wells avenue ever, in truth, reached the Hudson river. A careful examination herein shows that by the building of the Hudson river embankment and the mole or pier extending out into the river, and which met the embankment upon which the railroad was built, a new shore was, in fact, made for the Hudson river. By this embankment the bay theretofore existing became land locked, and there was no access from the old shore line to the new water line of the river. The little culvert of four feet which was made under or through the embankment at a point one hundred feet north of the northerly line of Wells avenue as extended, did not in any way furnish a means of access as upon a highway from Wells avenue to the river. Its sole purpose was to permit the tide to ebb and flow through it, and neither in law or in fact did it furnish any access for the purpose of business or pleasure to the waters of the river from the old shore. It was in this condition when, in 1856, Wells avenue was extended from a point in Broadway westerly to a point one foot east of the easterly line of this railroad embankment, and at that point it terminated, and at that termination there was no connection with the waters of the Hudson river, and no means of business communication therewith. In front of it was the solid masonry, twenty-five feet wide, of this embankment, upon which were laid the rails of the railroad, and this embankment was three feet higher than the grade of the extended street. Subsequent to that time the land was filled in on the west of that embankment, and at the time when

the grant to Frazier was made by the People of the state by letters-patent, such filling in had been made to a distance of fifty or sixty feet west of the embankment, and when the dedication was made by Frazier and others of land for the purpose of extending Wells avenue to a point five feet west of the westerly line of the railroad embankment, the land had at that time been extended two hundred and forty-five feet west of the embankment, and hence when the dedication and extension were concluded and the street was extended to the westerly end of the point dedicated it was then two hundred and forty feet away from the water line of the river with no means of access whatever, that is, so far as the highway is concerned. It terminated at that point and no one had the legal right to go one foot beyond that five feet west of the railway embankment without the permission of the owner of this land.

It is claimed that the affidavit of Mr. Cornell states facts which are quite the reverse of those which have been above set forth. Upon a careful perusal of his affidavit, I think it plain that he is testifying to his own opinion as to the legal effect of certain facts which are not in controversy, but from which he draws deductions which I do not think are correct. He states that at the time Wells avenue was extended, in 1856, the original high-water line of the Hudson river was east of the point to which said avenue was opened, and that the land under water between high and low-water mark was afterwards filled in so as to become part of the extended avenue, to a point west of the westerly line of the Hudson River Railroad tracks, and such extended avenue was dedicated to and accepted by the corporate authorities of Yonkers, and has ever since been a public street. He states that the public had, after such filling in and after the opening of Wells avenue, " at all times means of access to the navigable waters of the Hudson river, to a point west of said Hudson River Railroad track, upon and along said Wells avenue to the navigable waters where the tide ebbs and flows, and access to the channel to said river from the shore." Mr. Cornell does not pretend to dispute or in any manner contradict the specific

facts which are found in the statement prefixed to this opinion, but he evidently thinks, because of the fact that the laying out of Wells avenue in 1856 was to a point west of the original high-water mark which had existed before the embankment already described had been made, that he thereby conclusively shows that Wells avenue extended to the Hudson river, and he plainly assumes that the filling in on the west side of the embankment, and the dedication of the five feet west thereof, constituted an effective extension of the avenue, not only to that point, but to whatever further point it was necessary to go in order to reach the river. The means of access to the channel of the river spoken of in his affidavit are simply the extension of this highway five feet west of the track, and an assumed right to pass thence to the water line over the space filled in by Frazier or his grantees.

Upon the uncontradicted facts already detailed, I have no doubt that no such right exists as has been claimed on the part of the city. Up to 1856 it is not claimed that the street reached even as far west as the old high-water mark of the river, and when it did reach such old high-water mark the actual shore of the river was far west of it and also of this railroad embankment and had been substantially altered under authority from the state by private and corporate action. It is idle, even after its extension in 1856, to speak of this street as reaching the river bank when between the street and such bank there was then interposed the solid obstruction of the Hudson River Railroad embankment and many feet of land beyond it.

The case upon which reliance has been chiefly placed is that of the *People* v. *Lambier* (5 Denio, 9). But there the one controlling fact existed which does not exist here, for in that case the street did go to the shore of the river, and the filling in thereafter made was held by the court to be a continuation of the street. If instead of the street reaching the shore it had never been within many feet of it, no one would ever suspect that in filling in from the shore line which the street did not reach, the right to bridge over that intervening space thereby sprang into existence, together with the right to follow the fill-

ing in of the land as far out as it was extended. The case has no analogy whatever to this one.

Both orders of the General and Special Terms should be reversed, the award should be set aside, and the proceedings remitted to the commissioners for further proceeding in accordance with law, costs in all courts up to this time to be paid by the city of Yonkers.

All concur.

Ordered accordingly.