(120 App. Div. 576)

ISELIN v. VILLAGE OF COLD SPRING et al.

(Supreme Court, Appellate Division, Second Department. June 14, 1907.)

1. MUNICIPAL CORPORATIONS—STREETS—EVIDENCE AS TO LOCATION.
    On an issue as to whether a certain street had extended to the waters of the Hudson river before lands under water were filled in, evidence considered and *held* insufficient to show that the street was so extended.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1428.]

2. SAME.
    Rev. St. (1st Ed.) p. 520, c. 17, § 98, confirmed the acts of commissioners of highways in laying out, altering, or discontinuing any highway, provided the commissioners should cause a survey of the highway to be filed and recorded in the town clerk's office, and section 100 (page 521) provided that all public highways now in use heretofore laid out and allowed by law, of which a record shall have been made, shall be public

highways. *Held* that, on an issue as to the location of a street, a record of a survey of a highway, which became the street, was of no validity, in the absence of proof of use or of a laying out.

Hooker, J., dissenting.

Appeal from Special Term.

Action by Mary P. Iselin against the village of Cold Spring and others, as trustees of the village. Appeal by plaintiff from a judgment in favor of defendant, and from an order vacating an injunction. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Charles F. Brown (Louis M. Sonnenberg, on the brief), for appellant.

Joseph A. Greene, for respondents.

MILLER, J. The action is for an injunction to restrain the construction of a sewer through property claimed by the plaintiff, consisting of a dock built into the Hudson river at the foot of Main street, in the village of Cold Spring. The plaintiff's title is not attacked, but the defendant claims that the locus in quo is a public street. The plaintiff traces her title to a grant of lands under water made by the state in 1811 to her predecessors in title, who were the owners of the upland. The lands so granted were not filled in until about 1836. A dock appears to have been constructed upon the site of the present dock as early as 1842, since when it has continuously been recognized as the private property of the plaintiff and her predecessors. The village has assessed it as far back as the village records show, it has paid rent for the use of it, and now for the first time asserts a public easement.

The defendant relies upon the doctrine that a union between easements on land and on navigable waters once made cannot be broken by subsequent changes in the land, whether made by natural or artificial means. People v. Lambier, 5 Denio, 9, 47 Am. Dec. 273; Matter of City of Brooklyn, 73 N. Y. 179. In order to invoke this doctrine, the defendant had to show that before the land was filled in, as stated supra, Main street extended to the waters of the Hudson river. It may be assumed that a public right cannot be extinguished by adverse user, but the fact that the plaintiff and her predecessors have had uninterrupted and exclusive possession for more than 60 years, and that the public authorities have repeatedly recognized their right to possession, is entitled to great weight. The burden was on the defendant to establish the easement which it asserted. In the absence of record evidence, it is difficult, if not impossible, to show precisely what the conditions were 70 years ago, and it is necessary to consider every fact and circumstance that can possibly have any legitimate bearing on the fact to be proven; but, the difficulties of the case being due to the long acquiescence of the defendant, the court should not accept vague and uncertain testimony as proof.

There is no proof of the terminus in 1811 of what is now Main street, except that furnished by the map filed in the office of the Secretary of State with the application for the grant which was then

made. Said map indicates several buildings between the terminus of said road and the shore line, and, had there then been a road extending to the water, it is extremely probable that the commissioners of the land office would have restricted said grant so as to protect the public easement. The defendant relies on a record in the town clerk's office of Philipstown made in 1817, purporting to be the record of a survey made by Jacob Lent, surveyor, by the direction of two commissioners of the highway of said town, the material part of which I quote:

"Beginning at the westerly end and center of the Philipstown turnpike at Cold Spring Landing, bearing a course of south fifty-four degrees west to the verge of the flats on the easterly edge of the channel of said river, and producing a distance from the low-water mark of about six chains and fifty links to the edge of the said channel, and from the center of the said turnpike to the extremity of said road, completing in all a distance of eight chains, or thereabouts."

Said Philipstown turnpike is now Main street, and it is asserted that said record furnishes sufficient proof of an existing highway pursuant to 1 Rev. St. (1st Ed.) p. 520, c. 17, § 98, and Id. p. 521, § 100. Said section 98 confirmed the acts of commissioners of highways or any two of them in laying out, altering, or discontinuing any road or highway, provided such commissioners, or any two of them, had caused a survey of such roads or highways to be filed and recorded in the office of the town clerk of the town, and said section 100 provided that:

"All public highways now in use, heretofore laid out and allowed by any law of this state, of which a record shall have been made in the office of the clerk of the county or town * * * shall be deemed public highways."

It will be noticed that the probative force of such a record depends upon one of two facts: (a) That the highway shall then be in use; or (b) that it shall have theretofore been laid out and allowed by law. There is no proof of either of said facts. Said survey does not purport to be incorporated in any order signed by the commissioners of highways, as provided in the preceding section 55. It purports to be signed by the surveyor, and not by the commissioners of highways, and there is no proof of any order signed by said commissioners purporting to lay out said highway. The statute was evidently designed to establish existing highways and to confirm proceedings of the highway commissioners in laying out highways in which there had been irregularities. To permit proof of the acts of officers having limited jurisdiction by such a record as that relied on here, without any proof whatever of the facts upon which its validity depends, ignores long and well-settled rules of proving the acts of inferior courts or tribunals. In the case of Parker v. Van Houton, 7 Wend. 145, relied upon by the defendant, the highway, of which the survey was recorded, was in actual use as a public highway at the time. It does not seem necessary to cite authority upon the proposition that the record of the survey is of no validity in the absence of proof of use, or of a laying out; but the proposition has many times been decided. People v. Judges of Cortlandt County, 24 Wend. 491; Cole v. Van Keuren, 4 Hun, 262; Talmage v. Huntting, 29 N. Y. 447; Miller v. Brown, 56 N. Y. 383. Moreover, the alleged survey does not comply with the statute, because

it is not a survey. It does not fix the bounds of the highway as the statute evidently intended. It simply describes its length and direction, and, even if it were properly received in evidence, its probative force depends upon the location of the termini. The defendant relies upon proof that, allowing for the changes in the declination of the needle since 1817, the distance and direction from a point at the intersection of the present Main and Market streets to the plaintiff's dock correspond with the distance and direction indicated by said survey; but the same distance and direction could be obtained from some other starting point, and, as will be seen infra, it is not clear from the proof whether said "Philipstown turnpike" terminated in 1817 at the present intersection of Main and Market streets, or whether its terminus was some distance to the north where there was then a landing.

The respondent next relies on the descriptions contained in deeds made by the plaintiff's predecessors. As the land was filled in, lots were sold bounded upon the lines of Main street continued, and in many of the conveyances these lines are referred to as continuing into the river; but, without referring to them in detail, it is plain that they refer, not to an existing street or lines thereof extending into the river, but to a continuation of existing lines, and, so far as they have any probative force at all, tend to indicate that the existing street did not extend into the water. It is plain, therefore, that the defendant's case is not aided in the slightest by record evidence; but the judgment must be supported, if at all, by the testimony of living witnesses respecting conditions existing 70 years ago, and we are not at all surprised to find such testimony vague, uncertain, and conflicting.

From such testimony, it appears, either that Main street terminated at its present intersection with Market street, and that the present Market street was then a highway paralleling the shore line, or that Main street formed two branches at said point, one extending southward to a foundry, and the other northward to what was then Cold Spring Landing, and it is quite immaterial which theory is accepted. It is certain that there was no reason for the street terminating in the waters of the river at this point, as there was no landing there. The natural terminus of the street was either at the foundry or the landing referred to supra. It is clear from the testimony that the shore line as it then existed was not far from Market street as it now exists, but it is very uncertain whether any strip of land intervened between said highway and the shore line. There is no proof of the width of these streets, and their existence as streets depended entirely upon user. Some witnesses say that the water came up to Market street as it now exists; but there is no proof that the highway as then used corresponded with the present width of Market street. Some say that there was access to the river at said point from the foot of Main street, but that does not disprove that there was an intervening strip between the shore line and the highway over which said access was gained. There is one important fact upon which all of the witnesses agree, to wit, that there was a building between the river and the present intersection of Main and Market streets. It appears that at high tide the water came up under this building; but its presence, and the fact that the landing was some 200 feet to the north, are the two circumstances about which

there appears to be no doubt, and which to my mind show that Main street as it then existed did not terminate in the waters of the Hudson river at said point.

The defendant's case rests wholly upon dedication and user. Undoubtedly the conveyances, bounded upon the street, made by the plaintiff's predecessors, granted easements to their grantees, and, so far as the street was actually accepted, used, and worked by the public, there was a dedication and acceptance of a public easement; but such public easement was limited to the dedication actually made. Matter of City of Yonkers, 117 N. Y. 564, 23 N. E. 661; Mark v. Village of West Troy, 151 N. Y. 453, 45 N. E. 842.

I advise that the judgment be reversed on the law and the facts.

Judgment reversed, and new trial granted, costs to abide the final award of costs. All concur, except HOOKER, J., who dissents.