Phillips, J. (orally).
The plaintiff owns and occupies a lot fronting fifty feet on Euclid avenue, having a six story and basement building thereon, the basement extending thirteen feet under the sidewalk. The roadway of this street is sixty feet wide, and each sidewalk is nineteen feet wide. This space under the sidewalk, thirteen by fifty feet, is, and for many years has been used by plaintiff in connection with his basement, ¡and is of great value to him and to his property.
The defendant, an Ohio corporation, is engaged in the business of furnishing light, heat and power to the public generally, by means of pipes and conduits laid under ground, and is about to place one of its steam pipes1 in and along said excavation under the sidewalk. Plaintiff asks that defendant be enjoined from making such use of said part of the street.
The defendant .answers, justifying its proposed action under an ordinance of the city council and the direction of the board of public service. To this answer the plaintiff demurs.
The nature of the case 'and the course of the arguments involve two questions: first, is the proposed use of this part of Euclid avenue a proper street use ? In other words, is the laying of steam pipes beneath the surface of the street, for supplying steam to such of the public .as may want to use it for heat and power, such use of the highway as may properly be authorized by the public authorities; and, secondly, has the plaintiff such right to the use he is making of the part of the street as makes it immune from the proposed interference therewith?
The suggestion in argument that'this is not a public use of the street is answered by our Supreme Court and others, holding that the public use does not mean a use for the benefit of the entire public, or of any large portion of it; .but the use may be limited to the inhabitants of a small or restricted locality, if the use and benefit be in common, and not to particular individuals, or a very few persons. I cite McQuillen v. Hatton, 42 Ohio St., 202; Costar v. Water Co., 18 N. J. Eq., 55; Ross v. Davis, 97 Ind., 79; Pocantico Water Works Co. v. Bird, 130 N. Y., 249.
Any contention in this regard, however, must be deemed foreclosed in this case by the averment in the petition that the defend *547 ant is “engaged in the business of furnishing light, heat and power to the public generally.” The question remains, however, whether this public use of the street is a proper street use.
ITow stands this question upon principle—upon principles to be drawn from the trend of well-considered authoritative cases? In the earlier cases, controlling effect w.as too often given to the ownership of the fee in the land embraced within the highway. But in the later cases little or no effect is given to this feature. In Lewis, Em. Dom. (3d Ed.), Section 28, the author says:
“The uses which the public may make of a street do not de,pend upon the ownership of the fee. If the fee is in the abutting owner, it is subject to all legitimate street uses. If it is in the public, it is in trust for street uses, and is subject to certain rights or easements in the abutting owner, which can not be impaired by any diversion of the street to other uses. * * * It seems every way desirable that a distinction which is never made in the every-day dealings between man and man, touching abutting property, should be abandoned by the courts. There is no substantial distinction between a perpetual easement for street uses, and a fee for street uses.”
The same doctrine has been announced by our Supreme Court again .and again. The latest expression of that court upon the subject is found in Kellogg v. Traction Co., 80 Ohio St., 331. I will not stop to read. ,
In many of the earlier cases, and in some of the more recent cases, the public right is limited to such uses of the highway as will in some way, directly or indirectly, promote and subserve the primary purposes of travel and transportation. The efforts of some courts to bring some new use within this narrow .and partial view of the primary purposes of the highway, are more amusing than instructive. In the march of progress, in the social and in the business world, the law must necessarily follow; it can not lead. But while the courts can not keep .abreast of the march of progress, they ought at least to keep within hailing distance of the procession.
We are making many uses of streets in large cities that were not intended, or thought of, when the streets were dedicated; and it is reasonably certain that in the future still other uses will be made—must be made of municipal highways to meet the *548 growing necessities of dense population and of congested business. Following this inevitable enlargement of street uses for public purposes, the courts have taken a broader view of street uses than was demanded in the earlier cases, and have generally held that the legitimate public uses of a municipal highway are not limited to such uses as must have been in actual contemplation by the dedicator, but are to be extended to all such public uses as are not destructive of, or inconsistent with, the uses so originally contemplated. The sound logic of this view is, that the preservation and maintenance of the original purpose and benefits of the dedication, does’ not require a restriction to such uses as were originally contemplated, but only that no new use shall be allowed that -will destroy or impair the uses originally contemplated.
It is very clearly to be seen that the rule of restriction—the old rule, if I may so call it—while it preserves to the public all of the benefits originally contemplated by the dedication, stands in the way of making new and necessary uses of the highway that do not come within the original contemplation. It is just as clearly to be seen that the new rule, if I may so term it, preserves to the public just as fully all the benefits originally contemplated by the dedication, and at the same time sanctions and fosters the additional public uses that grow out of the necessity of the situation. The former rule is narrow and restricted; the latter is broad and comprehensive, as all rules should be that concern the public welfare.
This gradual development of the law is not at all exceptional; it is a natural process. However erratic and disorderly the' course of legislation may be, the laws that rest upon principle, and that embody doctrines, are evolved by an orderly sequence of events coincident with the progress of social and business conditions. Herbert Spencer says that the growth and adaptation of the law is brought about mostly by small accumulated changes, the unprompted workings of organized society—much as towns and cities have insensibly grown up—to meet the growing wants of a progressive humanity.
It may safely be assumed, I think, that the primary purpose, and perhaps the only purpose in actual contemplation in the dedi *549 cation of land for a highway was the surface use thereof. But, as I have said, this has been found to be only a partial view of the authorized uses of a municipal highway. Lewis, Em. Dom., 182, says:
‘ ‘ While the purpose of streets is primarly for public travel and transportation, yet in populous districts it has been the immemorial custom to employ them for other purposes of a public nature which, though having little or no connection with the use or improvement of the street as a highway, are not inconsistent with such use. Out of this usage has grown up a rule that streets in cities and villages may be used for various incidental purposes. ’ ’
The Supreme Court of Minnesota, dealing with the construction of a telephone line along the side of a country highway, has this to say upon the .subject I am considering. I read from Cater v. Exchange Co., 60 Minn., 539, 543, 545, Judge Mitchell delivering the opinion:
“The question then is, what is the nature and extent of the public easement in the highway? If there is any one fact established in the history of society and of the law itself, it is that the mode of exercise of this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath. In a slightly more advanced state it included the idea of a way for pack animals, and next a way for vehicles drawn by animals—constituting, respectively, the ‘iter,’ the ‘actus’ and the ‘via’ of the Romans. And thus the methods of using public highways expanded with the growth of civilization until today our urban highways áre devoted to a variety of uses not known in former times and never dreamed of by the owners of the soil when the public easement was acquired. Hence, it has become settled that the easement is not limited to the párticular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utillity and general convenience of which may afterward be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired and are more onerous to him than those then in use.
“Another proposition which we believe to be sound is that the public easement in the highway is not limited to travel or trans *550 portation of persons, or property in movable vehicles. This is doubtless the principal and most necessary use of highways, and in a less advanced state of society was the only known use, as the etymology of the word ‘way’ indicates, and the courts, which as a rule are exceedingly conservative in following old definitions, have often seemed inclined to adhere to this original conception of the purpose of the highway, and to exclude every form of use that does not strictly come within it, but it is now universally considered that urban highways may be used for constructing sewers and laying pipes for the transmission of gas, water and the like, for public use. Some courts put this on the ground that these uses are merely incidental to, and in aid of, travel on the streets. Other courts, put it on the ground that such uses are contemplated when the easement in urban ways is acquired, but not in the case of rural highways. But it seems to us that neither of these reasons is either correct or satisfactory. The uses referred to of urban streets are not in aid of travel, but are themselves independent and primary uses, although all within the general purpose for which highways are designed. Neither can a distinction between urban and rural ways be sustained on the ground that such uses were contemplated when the public easement was acquired in the former, but not when the easement was acquired in the latter. As a matter of fact, most of these uses were unknown when the public easement was- acquired in many of the streets in the older cities. Indeed, many of what are now urban highways were merely country roads when the public acquired its easement in them, and doubtless many highways that are now merely country roads will in time become urban streets. When such changes occur, will the abutting owners be entitled to new compensation before the public can build sewers of lay water or gas pipes in those streets ?
“It seems to us that -a limitation of the public easement in highways to travel and the transportation of persons and property in movable vehicles, is too narrow. In our judgment public highways, whether urban or rural, are designed as avenues of communication, and if the original conception of a highway was limited to travel and transportation of property in movable vehicles, it was because these were the only modes of communication then known; that as civilization advances, and new and improved methods of communication and transportation are developed, these are all in aid of and within the general -purpose for which highways are designed. Whether it be travel, the transportation of persons and property, or the transmission of intelligence, and whether accomplished by old methods or by new ones, they -are all included within the public ‘highway easement,’ and impose no additional servitude on the land, provided they *551 are not inconsistent with the reasonably safe .and practical nse of the highway in other and usual- and necessary modes, and provided they do not unreasonably impair the special easements of abutting owners in the streets for purposes of access, light and air. It is impracticable, as well as dangerous, to attempt to lay down, except in this general form, any rule or test of universal application as to what is or what is not a legitimate 'street or highway use.’ Courts have often attempted to do so, but have always been compelled, by the logic of events, to shift their ground.”
I read from the opinion of Judge Peekham in Re City of Yonkers, 117 N. Y., 564, 573:
' ‘ If the land in question be .as claimed—a public street in the city of Yonkers—then that city has the right, as an incident to its jurisdiction over its streets and highways, to lay down a sewer therein in accordance with its by-laws and regulations. To put a sewer in a public street in a city is simply to use the street in a manner which is necessiarily incident to the use for which streets are opened and laid out in cities. It is a part of the purpose in view when land is taken or dedicated for use as a public street in a city, that it shall be used not only for the purposes of mere passage and repassage, but for all incidental purposes, including the building of sewers therein, as may be necessary, appropriate and usual for the proper enjoyment of such street.”
To the same effect I cite, but do not read, Van Brunt v. Flathush, 59 Hun., 192 (13 N. Y. Supp., 545); McDevitt v. Gas Co., 160 Pa. St., 367 (28 Alt. Rep., 948); Mordhurst v. Traction Co., 163 Ind., 268 (71 N. E. Rep., 642); Cumberland Tel. & Tel. Co. v. Averitt, 120 Ky., 34 (85 S. W. Rep., 204); State v. Potter, 47 N. Y., 375, 380; Lewis, Em. Dom., 182-186; Carli v. Street Ry. & Transfer Co., 28 Minn., 373, 376 (41 Am. Rep., 290); Hays v. Telephone Co., 21 C. C., 480.
In harmony with this expansive doctrine as to street uses, the Legislature and the municipal council have conferred upon this defendant authority, so far as authority can be conferred, to do what the defendant threatens to do. Section 1536-100, Revised Statutes, empowers municipal corporations to grant by ordinance :
' ‘ The use of its streets, avenues, alleys, lanes and public places, to lay pipes, conduits, manholes, drains and other necessary fix *552 tures and appliances, under the surface thereof, to be used for supplying such municipality and its inhabitants with steam or hot water, or both, for heat or power purposes, or both.”
In the differentiation and distribution of municipal powers, the municipal code provides that:
‘ ‘ The powers of council shall be legislative only, and it shall perform no administrative duties whatever.” Section 1536-618, Revised Statutes. .
And it provides that:
“The directors of public service shall be the chief administrative authority of the city.” Section 1536-675, Revised Statutes.
The city ordinance grants to the light company the right to construct and maintain'pipes and conduits in certain streets for steam and hot water lines, and provides that the work shall be done upon permits issued by, and to the satisfaction of, the board of public service. And it further provides that wherever it is feasible or desirable, in the opinion of said board, to have the pipes and conduits laid between the curb line of the roadway and the building or lot line, they shall be so laid.
The answer avers that the board of public service has directed the company to lay its pipes where it is now laying them and proposes to lay them.
The power of the Legislature and the municipal council to apthorize such use of the streets is fully recognized in Kumler v. Silsbee, 38 Ohio St., 445. Judge Okey says in the course of his opinion, page 447:
“A statute granting authority to lay pipes, for the purposes specified, in the streets of municipal corporations, would be clearly authorized by the general grant of legislative power; and where a statute does not impinge upon any constitutional inhibition, the Legislature is the sole judge as to the form it may be made to assume.”
Anri where the municipal council has' a discretion and judgment to be exercised, ,as to when and where and how a street use shall be exercised, its judgment is final. It can not be reviewed or modified by the courts.
*553 Finding, as I .do, that the placing of a steam pipe in Euclid avenue as proposed by the defendant is a public use of the highway, that it is a legitimate street use, and that it has been duly authorized, it remains to inquire whether the plaintiff has such right to the use he is making of the part of the street as makes it immune from the proposed interference therewith.
The uses that the public may make of a' municipal highway are more or less indeterminate, and perhaps they must remain so. They never can be completely catalogued, because we can not say what other needs may arise to justify' additional uses. Abutting landowners have rights in the highway, just as well settled, and as well protected, as the rights of the public therein; and the conflicting claims of the public authorities and of abutting landowners^ as to the legitimate rights of each in the public highways, has been a fruitful source of litigation, and of discordant views by the courts.
To say, .as some courts have said, that the only uses to which a street is devoted by dedication are public uses, and that all uses not embraced in such dedication belong, of. right, to the abutting landowners, is a short-sighted view of the purpose and effect of the dedication, and it unduly enlarges the rights of the landowner. As matter of fact and history, and by the settled doctrine of our jurisprudence, the owner of land abutting on a city street has an easement in the adjoining street, for access, for light, and for air. These rights arise with the creation of the highway, and regardless of the mode of its establishment. These are juristic rights, fully recognized and protected in the person of inherence; and these are all the interests that have been established by uniform authoritative adjudication, as belonging to the owner of lands abutting upon a municipal highway.
There are other private uses habitually made of lands within highways—surface, supersurfaee and subsurface uses—that do not rest upon absolute right, but rest upon license or permission. These are more in the nature of privileges, and must at any time give way to public uses when needed.
An abutting lot owner may, with the permission, or the mere acquiescence, of the municipal authorities, plant and maintain shade trees upon the street; he may in like manner make and *554 maifitain an excavation under the sidewalk; and he may in like manner maintain some structures over and above the surface of the street. But such private uses are only temporary privileges. They must give way to the legitimate public uses, when asserted, and they can never, ripen into a strictly juristic right, that is adversary to the public right, which is everywhere regarded as dominant.' The leading ease in Ohio, upon this subject, is Elster v. Springfield, 49 Ohio St., 82. I read what is said of this case by the Supreme Court in Kellogg v. Traction Co., 80 Ohio St., 331, 346, 347. I read this because it is a concise statement of what is decided in the Elster case.
“In Elster v. Springfield, 49 Ohio St., 82, a water pipe had been laid in the street under a grant or license by the city, for the purpose of conveying water from a spring to a paper mill several squares distant. In the construction in the street of a large sewer by the city, more than twenty-one years after the pipe had been laid, the water pipe was destroyed and'the owner sued the city for damages. In the opinion it is said, by Spear, J.: ‘The laying of sewers, like that of gas and water pipes beneath the soil, and the erection of lamps and hitching posts, etc., upon the surface, is a street use, sanctioned as such by their obvious purpose, and long continued usage.’ And again he says: ‘As we have seen, the city as to its streets, is a trustee for the use of the public. A trustee of property for the benefit of the public could not, any more than could a trustee of private property held for known specific and continuing uses, alien or encumber the property to the prejudice of the beneficiary, and a purchaser dealing with the trustee, in either case, would be bound to take notice, at his peril, of the limitation of the power (2 Dillon, Mun. Corp., Section 671; Alton v. Trans. Co., 15 Ill., 60). Hence it would follow that whatever grant may have been made by the town of Springfield to the Kills, to maintain water pipes in Center street, could have no greater operation than as a temporary license, subject to be revoked at the will of the town, or city, as its necessities in the future uses of the street might require. It necessarily results from this that the enjoyment of the street beneath the surface for the laying of the pipes and the flowing of the water through them was a permissive use, and that no permanent right could be acquired by long continuance.’ And it is there held: ‘The'use of the street by the plaintiff, for his water pipes being allowed by license, there was no enjoyment adverse to the city. Nor had the city power by grant, to give *555 plaintiff any right in the street- inconsistent with the future legitimate uses of the street by the city. Hence, no right by prescription to maintain the pipes in the street would vest in the plaintiff, although he had enjoyed the use more than twenty-one years, and any damages accruing to plaintiff by removing the pipes, and thus interrupting the flow of water through them, would be damnum absque injuria.’ ”
Kellogg v. Traction Co., supra, is a case in which the city had given to the owner of property on opposite sides of the street, permission to construct a bridge over the street from one building to another belonging to the same party, far enough above the street’s surface to give street clearance, and a tax-payer brought suit to enjoin the erection of such structure over the street. The Supreme Court held that such -action could not be maintained; that an abutting lot owner, making private use of part of the street —a use that does not interfere with any public use of the street, and doing this with the sanction of the municipal authorities—• is immune from a tax-payer’s suit to enjoin such use. The case deals with a mere license, and not with any easement appendant to an abutting lot; and it points the distinction between the two.
Callen v. Electric Light Co., 66 Ohio St., 166, is a case that was often referred to in the argument. This case decides that the company had no right to place and maintain a pole for the support of its wires, in front of plaintiff’s vacant lot. It is difficult to tell, from the report, either the facte of the case or the rationale of the decision. It is not clearly stated, but I think it may be fairly inferred from what is stated, that the pole complained of would impair plaintiff’s property right of ingress and egress to and from his lot.
The court further finds that such use of the street is not a legitimate street use, because the electricity was to be furnished, not to the city, but to private consumers. The statement in the opinion is this:
“The electric lighting by defendant is not of the streets and for the city; it is wholly for private use; hence it is a private purpose and is not a street purpose in any aspect of it. Its use of these streets is not such as was contemplated by the original dedication. On the contrary, the maintenance of its structures *556 devolves new burdens upon the land, burdens calculated to materially impair the rights of the owners in the streets. ’ ’
Such demarcation of public uses and private uses is entirely unprecedented, and I am at a loss to account for it, unless there was something in the proposed use, not apparent from the report of the case, that distinguished it from all other instances of supplying the public needs.. If this distinction between public uses and private uses is to be regarded as a doctrine of -the decision, its future application ought certainly to ,be limited to cases identical in their facts with the facts in the Callen case. I refer to what our Supreme Court has long ago said upon this subject. I read McQuillen v. Hatton, 42 Ohio St., 202, 204, reading from the opinion:
“Whether or not the use for which property is proposed to be taken is a public use, is a question of law, to be settled by the judicial power. (Citing cases.) The use must b£ for the public at large. # * * The use that will justify the taking of private property by the power of eminent domain, is the use by or for the government, the general public or some portion of it; and not the use by or for particular individuals, or for the benefit of certain estates. The use may be limited to the inhabitants of a small locality, but the benefit must be in common and not to a very few persons or estates.”
Beferring again to Callen v. Electric Co., if the proposed use of the street was found to be a taking of a property right of the plaintiff, that fact alone would entitle the lot owner to the relief he sought, whether it was or was not, a proper street use; so that, having found such impairment of the property-right, it was not necessary to determine the character of the proposed use, for the action was to conserve an individual proprietary right, and not a public right. In this view of the case, all that was said as to the character of such use of the highway was obiter dictum, and is not authoritative.
There is one feature of the Callen case that distinguishes it from the ease in hand. In that ease, the right invaded was that of ingress and egress, which all courts agree is a property right, inviolate under the Constitution; while in this ease, the right invaded is in the nature of a license. It is not a property right.
*557 The case of Webb v. Gas Fuel Co., 16 Bull., 121, cited in argument, turned entirely upon the danger from an insufficient pipe being laid in the street to conduct natural gas. That case had none of the characteristic features of this case.
The ease of Reese v. Cleveland, 5 N.P. (N.S.), 193, decided by another branch of this court, did not involve the right of the city to make a street use of its highway. Reese had extended his sign over and'above the sidewalk, under the provisions of an ordinance. The board of public service was about to remove the sign, the ordinance remaining in force. The case involved the rights of a licensee, the power of the board of puN lie service, and the police power of the city.
If the city were about to fill up plaintiff’s excavation, under the sidewalk, arbitrarily, in the alleged exercise of the police power, the doctrine of the Reese ease might apply. That decision is not in conflict with the views I have expressed.
Burns v. Telephone Co., 3 N.P.(N.S.), 257, rests upon the holding that a subsurface use of the street for a 'conduit, carrying telephone wires, is not a legitimate street use, and that the abutting lot owner has the right to the subsoil in front of his lot, except as it may be needed for street purposes. I think this decision mimimizes the public right and maximizes the private right. I can not subscribe to either proposition. The holding as to street use is directly contrary to that of the circuit court in Hays v. Telephone Co., supra, heretofore cited, though it follows the dictum in the Callen case.
In Federal Gas & Fuel Co. v. Townsend, 1 N.P.(N.S.), 289, Judge Bigger, of the Franklin Common Pleas, following the misleading dictum in the Callen case, holds that the laying of a pipe longitudinally under the sidewalk, for the conveyance of natural gas to private consumers, is not a proper street use. And he holds that the tearing up of the sidewalk, to place and to repair the pipe, would be an unwaranted interference with the right of ingress and egress of the abutting lot owner. In this regard, I think the court must have overlooked the several decisions of our Supreme Court to the effect that all rights in the highways, both public rights and private rights therein, are always subject to such incidental and temporary obstructions as manifest necessity *558 may require. So that the tearing up of the sidewalk to lay a pipe or repair a pipe would not be any interference with the right of the owner of ingress and egress to and from his lot. It is temporary, it is necessary, and the lot owner may be subjected the public may be subjected, to such inconvenience.
From the maze of conflicting and irreconcilable decisions, in Ohio and elsewhere, I find the following classification of street uses to rest upon reason and the authoritative decisions:
First. The rights of the public in municipal highways include any and all public uses thereof—whether they be strictly street uses, or other necessary municipal uses—that .are not inconsistent with the uses originally contemplated. As the public needs enlarge, the authorized public uses enlarge, within the limits aforesaid. In the nature of things, this enlargement of the uses the public may rightfully make of municipal highways must go on; .and the number and variety of these authorized uses must all the while be more or less indeterminate.
Second. The owner of lands abutting upon a municipal highway has rights therein; and these rights, unlike the authorized public uses, are definite and determinate. These are, the right of access, of light, and of air. These rights arise with the creation of the highway, .are appendant to the abutting lands, and are bottomed upon the broad principle of jurisprudence, that the right of property in general includes the right of user and enjoyment of the tangible thing. It takes this to complete the orbit of the right. These rights—of access, of light, and of air—are all the juristic rights that have been established by the authoritative decisions, as belonging to the owner of abutting lanc[s. These are recognized as property rights of the landowner, and are inviolate under the Constitution, until compensation shall be made to the owner.
Third. In addition to the foregoing property rights of the abutting landowner, he may, under license from, or by acquiescence of, the city council, make some private loses of land within the highway, so long as they serve a useful purpose and do not inconvenience the public. These are not appendant rights, but are mere privileges, revocable at the pleasure of the council, and must give way to any legitimate public use when required. Elster v. Springfield, supra; Kellogg v. Traction Co., supra.
*559 The proposed use of the subsurface of the sidewalk being a legitimate street use, and the plaintiff’s occupancy thereof being a mere temporary privilege, the latter must give way to the former.
The demurrer to the answer is overruled; and plaintiff not desiring to plead further, his petition is dismissed.