## HENRY J. LANGLEY *vs.* DANIEL A. CHAPIN.

Bristol.   January 6. — 22, 1883.

A deed of real estate contained the following clause: "This conveyance is made upon the condition that the said C.," the grantee, "will erect upon said premises a cotton-factory within two years from the date hereof." *Held*, that this was a condition annexed to the estate conveyed, and not a personal covenant with the grantor.

An entry by a grantor of land, for breach of a condition annexed to the land conveyed, is not invalid for want of notice to the grantee.

On a writ of entry, brought by one of two grantors of land against a person claiming under the grantee, to recover the land, on the ground of a breach of a condition annexed to the land conveyed, the tenant's bill of exceptions stated that the demandant entered for breach of condition, and that the other grantor subsequently conveyed his interest to him. *Held*, that, as the respective interests of the grantors did not appear in the exceptions, and as the entry by the demandant might have been made as cotenant or agent of the other grantor, the exceptions did not show that the entry was not sufficient to revest the entire estate; and that the subsequent conveyance was not one of a mere right of reëntry.

A sale of land for non-payment of taxes, if valid, creates a title paramount to any existing estate therein; and such title becomes absolute by the lapse of two years.

If a city has taken a deed of land sold for taxes, under the St. of 1862, *c.* 183, it cannot, after the expiration of two years, under the St. of 1878, *c.* 266, § 10, sell the land to a person not entitled to redeem, except by public auction.

A. conveyed land in a city to B. on a condition. While the land was in the possession of B. it was sold for non-payment of taxes, and a deed made to the city. A. then entered for breach of condition. After the two years allowed by law for the redemption of the land from the tax sale had expired, the city sold the land, by private sale, to B., in consideration of the payment by him of the amount of the tax for which it was originally sold, intervening taxes and charges, and gave him a quitclaim deed of the land. *Held*, that, although the deed was invalid, the payment by B. enured to the benefit of A., and extinguished the title acquired by the city; and that A. could maintain a writ of entry against B. to recover possession of the land.

The finding by the presiding judge, at the trial of a writ of entry, without a jury, that neither the tenant nor his grantor had had such possession of the demanded premises for six years as to entitle either of them to improvements, is conclusive.

WRIT OF ENTRY, dated May 18, 1881, to recover a parcel of land in Fall River. Plea *nul disseisin*. The tenant also filed a claim for improvements. Trial in the Superior Court, without a jury, before *Blodgett*, J., who allowed a bill of exceptions in substance as follows:

The demandant put in a deed of the land in question from John Jenks and others to himself and Daniel McCowan, dated February 15, 1872, and a deed, dated September 17, 1873, from himself and McCowan to a corporation called the Corbitant Mills, by the terms of which the grantors, in consideration of one dollar, conveyed to said corporation the land in question, and which contained, after the description of the land, and before the habendum, the following clause: "This conveyance is made by us upon condition that the said Corbitant Mills, or its successors, will erect or cause to be erected upon said premises a cotton-factory of not less than twenty thousand spindles within two years from the date hereof."

The demandant's evidence further tended to show that the Corbitant Mills, in the fall of 1873, after the delivery of the deed, and in the spring of 1874, put in the foundation of a cotton-mill, but did nothing after the last-named time towards its erection; and that, in 1877, he entered and took possession for breach of the condition contained in the deed to the corporation, and made a certificate of that fact, which was recorded in the registry of deeds at Taunton. No notice of such entry was ever given to the tenant, or those under whom he claims. The demandant testified that, after taking possession in 1877, he went on the premises very frequently, and never saw the tenant there. The demandant also put in evidence a conveyance from McCowan to himself, dated February 16, 1880.

The tenant put in evidence to show that the city of Fall River, in 1876 and 1877, sold the land in question by public auction, for non-payment of taxes, under proceedings that were regular, and bid it off, and held it until March 1, 1880, when the city gave a quitclaim deed of the land to the Corbitant Mills, the tenant paying the taxes, and that afterwards, on the same day, the Corbitant Mills gave a quitclaim deed of the land to the tenant. The deed from the city of Fall River recited that, on October 12, 1877, the city received from its treasurer and collector of taxes a conveyance of a certain parcel of real estate, upon which there was then due the city, for taxes for the year 1875, the sum of $96.03; that the Corbitant Mills, "who claim to be entitled to redeem said real estate, had paid to the city the sum of $354.81 in redemption thereof, the same being the sum

due for taxes at the time of sale, together with ten per cent interest per annum thereupon, and all intervening taxes and necessary charges; " and released to the Corbitant Mills, in consideration of $354, " all the right, title, interest and estate which the said city of Fall River acquired under and by virtue of the said deed and all subsequent deeds of its treasurer and collector of taxes, in and to " the land in question, describing it by metes and bounds.

The tenant testified that the Corbitant Mills had expended the sum of $7500 in putting in a foundation and getting out stone on the land; that it built a blacksmith's shop and one or two other sheds on the land; that it did nothing in the way of building the mill after the spring of 1875; that, after the last-named date, the witness went there occasionally, and had the tools and fixtures in the sheds and shops cared for until sold; and that, in 1877, he sold for the corporation one of the buildings on the land.

No tender was ever made by the demandant, or by any one in his behalf, of the taxes and charges for which the land was sold; and, after the entry in 1877, the demandant did nothing to utilize or improve the premises.

The tenant asked the judge to rule that the clause in the deed that the grantee should erect a cotton-mill in two years from the date of the deed was a covenant, if anything; that it could not work a forfeiture of the whole estate; that the demandant could not maintain his action; and that the tenant also had good title by the tax sale and mesne conveyances to him; or, if not, that the title to the land was in the city of Fall River when the demandant sued out his writ, and he could not maintain his action. The tenant also contended that, if judgment was for the demandant, he was entitled to the improvements made by his grantor. The judge ruled that the clause in the deed was a condition, and, not being complied with, worked a forfeiture of the estate; that the Corbitant Mills by its deed from the city of Fall River acquired no title against the demandant, and that the deed on the part of the city of Fall River conveyed no title; that the demandant could maintain his action, and had title; and found as a fact, upon all the evidence, that neither the tenant nor his grantor had had such possession for six years

as to entitle him or his grantor to improvements; and found for the demandant. The tenant alleged exceptions.

*H. K. Braley & M. G. B. Swift*, for the tenant. 1. Grants are to be construed beneficially for the grantor, and forfeitures are not favored in law or equity. If it be doubtful whether a clause in a deed is a covenant or a condition, courts will not incline to the latter construction. The deed from McCowan and Langley to the Corbitant Mills is not, by the accepted rule of the present day, a grant upon condition subsequent, but is a conveyance of an absolute title. The words upon which the demandant relies, not being coupled with any clause of forfeiture or reëntry, do not, by the strict rule of common law, work a forfeiture; and a result so disastrous to the tenant is not to be established by mere inference or argument. *Rawson* v. *Uxbridge School District*, 7 Allen, 125. *Chapin* v. *Harris*, 8 Allen, 594. *Ayer* v. *Emery*, 14 Allen, 67. *Sohier* v. *Trinity Church*, 109 Mass. 1. The doctrine in *Gray* v. *Blanchard*, 8 Pick. 283, if ever regarded as a precedent, is .overruled by the cases above cited. *Stone* v. *Ellis*, 9 Cush. 95, is not analogous, because in the case at bar the full consideration of the deed was paid.

2. If this is a condition subsequent, it was broken before February 16, 1880. McCowan never availed himself of his rights under it, and his deed to the demandant conveyed no right of reëntry upon the premises. A condition in a grant of land can be reserved only to the grantor and his heirs. The privity existing between grantor and heir does not exist between grantor and grantee. *Rice* v. *Boston & Worcester Railroad*, 12 Allen, 141. *Stearns* v. *Harris*, 8 Allen, 597. *Guild* v. *Richards*, 16 Gray, 309. *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 85. *Brattle Square Church* v. *Grant*, 3 Gray, 142. *Dana* v. *Wentworth*, 111 Mass. 291. *Skinner* v. *Shepard*, 130 Mass. 180. *Tobey* v. *Moore*, 130 Mass. 448. McCowan has waived the breach of the condition by not availing himself of any forfeiture. *Hubbard* v. *Hubbard*, 97 Mass. 188.

3. The entry of the demandant, without notice to the tenant or his grantors, was not sufficient. He should have given notice of his entry, and the purpose of it. *Erskine* v. *Townsend*, 2 Mass. 493. *Guild* v. *Richards, Stone* v. *Ellis*, and *Stockbridge Iron Co.* v. *Cone Iron Works, ubi supra.*

4. The sale and deed to the city of Fall River, for non-payment of taxes, conveyed to the city a good title, subject to the right of redemption. Pub. Sts. *c.* 12, §§ 40, 42. And the demandant, not having availed himself of the provisions of the statute, has no title to, or immediate right of entry upon, the premises. Pub. Sts. *c.* 12, §§ 49, 58, 66.

5. The tenant is entitled to compensation for improvements. Pub. Sts. *c.* 173, § 17. The entry of the demandant in 1877 being insufficient to terminate the estate of the Corbitant Mills and vest it in himself, it is clear that the adverse possession of the tenant and his grantors was more than six years; and he is entitled to compensation for improvements, under the Pub. Sts. *c.* 173, § 18. *McSorley* v. *Larissa*, 100 Mass. 270.

*J. M. Morton & A. J. Jennings*, for the demandant.

HOLMES, J. The first question raised by the bill of exceptions touches the construction of the clause of the deed of September 17, 1873, to the Corbitant Mills. There is no doubt that it attaches a condition to the estate conveyed. The tenant argues that it amounts only to a personal covenant with the grantors. But there is nothing in the context which warrants any other than the natural interpretation of the words used, and we must therefore assume that they mean what they seem to.

The condition was broken, and the demandant entered for the breach in 1877. The nature of the respective interests of the demandant and McCowan does not appear, and we cannot discover enough in the bill of exceptions to show that the demandant's entry was not made by him as cotenant, or as agent on behalf of McCowan, as well as for himself, or was insufficient for the purpose of revesting the entire estate. *Smales* v. *Dale*, Hob. 120. Co. Lit. 258 *a.* 2 Cruise Dig. tit. 13, *c.* 2, § 43.

The entry was not invalid for want of notice. The cases cited for the tenant lend no countenance to the position, that such an entry must be accompanied by notice in order to be effectual, when there is no ambiguity in the character or purpose of the entry.

Finally, the validity of the entry was not affected by the sale for taxes. This was not argued by the tenant, and it is enough to say that it does not appear distinctly from the bill of exceptions whether the first conveyance under a tax sale was before

or after the entry, without meaning to intimate that an entry would not have been good after the sale.

The fee was therefore revested in the demandant and McCowan, and McCowan's conveyance to the demandant is not open to the objection urged by the tenant, that it was an attempt to convey a mere right of reëntry.

The rest of the case is made difficult to deal with by the obscurity of the bill of exceptions. The rulings asked by the tenant were open to the objection that they assumed the truth of all the facts which his evidence tended to prove. But the court not only refused the tenant's requests, but ruled that the demandant could maintain his action and had title. Considering the frequent infirmity of tax titles, and that possession is rarely taken under tax deeds, it is hard to believe that the ruling in question was not made subject to a tacit assumption or finding that the demandant had the elder possession, or that there was a defect in the tax proceedings. But as the former does not clearly appear, and as the tenant offered evidence tending to show a valid sale for taxes to Fall River in 1876 and 1877, it seems fair to interpret the ruling as meaning that the demandant had title by his entry, irrespective of any mere possessory right, and notwithstanding the tax sale, even if valid, or the lapse of the period of redemption since that sale took place.

To maintain this ruling, so interpreted, it must either be shown that the tax sale did not affect the demandant's title, but applied only to the existing fee, which was extinguished by the demandant's entry for breach of condition, or that the effect of the sale was subsequently got rid of.

As to the former of these propositions, it is to be observed that the statutes nowhere expressly contemplate a case like the present. But the reasoning and authority of *Parker* v. *Baxter*, 2 Gray, 185, go far to establish that a sale for taxes is a conveyance which deals with the land and creates a title paramount to any existing estate. There can be no doubt that the lien binds the land; Gen. Sts. *c.* 12, § 22; and as the lien depends upon the sale for its efficacy, there is the strongest reason for believing that the sale was intended by the statute to go behind all interests. This construction is confirmed by a reference to the legislation a few years before and after *Parker* v. *Baxter*. The St.

of 1849, *c.* 213, § 1, reënacted in the St. of 1856, *c.* 239, § 5, provided that "no sale of real estate for taxes shall affect the right of any person not taxable therefor, unless a written demand is first made upon said person, by the collector, for the payment of said taxes." This was repealed by the St. of 1858, *c.* 82, and it may fairly be argued that the Legislature has thus interpreted its own work, and has indicated its will for the future. For, after declaring by implication that a saving act was necessary to prevent the rights of persons not taxable from being affected, it has done away with the saving act, and has reënacted the old laws without it, and thus has signified its intent to make the sale binding on all the world.

The language of the Gen. Sts. *c.* 12, § 35, is entirely consistent with the view we take. By that section, the collector's deed "shall convey . . . . all the right and interest which the owner had therein at the time when the same was taken for his taxes." These words were one of the amendments to the report of the commissioners on the Revised Statutes, and it is pretty clear that they were not intended to cut down the effect of a sale, but simply to declare that the effect was not diminished by an intervening alienation. The sale for taxes therefore, if valid, created a title paramount to the demandant's, and that title became absolute by the lapse of two years.

It remains to consider whether anything has happened since to get rid of the title thus acquired by Fall River. The only material facts are the payment by the Corbitant Mills and the deed from Fall River to the corporation on March 1, 1880. The deed conveyed no title to the Corbitant Mills, as against the demandant, if for no other reason because it was not made in pursuance of a sale by public auction. Sts. 1862, *c.* 183, § 7; 1878, *c.* 266, § 10. *Walsh* v. *Wilson*, 130 Mass. 124, 126. But the question is not on the effect of the deed, but on the effect of the payment.

In order to sustain the ruling that the demandant could maintain his action and had title, it is necessary to hold that the transaction between the city of Fall River and the Corbitant Mills had the same effect as a payment by the demandant within the two years, discharged all claim of Fall River upon the land, and left the demandant's title clear. Such a decision would be

impossible in any ordinary case; for it amounts to saying, that after the claim for taxes is satisfied and extinguished and the city has become owner of the land which formerly secured it, in fee simple, a party, who by the demandant's entry had become a stranger to the land, and who, if not by the entry, at least by the satisfaction of the claim for taxes, by the sale to the city and lapse of two years, had become a stranger to the claim in any form, (if there is any claim except to enforce the lien,) could, without the concurrence of the demandant, treat the claim as outstanding, could pay it on his own behalf not acting as the demandant's agent, and could by a transaction *in pais* treat the city's interest as only a lien to be discharged by such payment, and thus devest an estate of fee simple, and revest a title in the demandant without his concurrence and without a deed. Such a conclusion strains a good many technical rules; but with regard to tax titles, as they have been dealt with in this Commonwealth, it may be accepted. It must be remembered that the whole machinery of sale to a city has for its only purpose to put a certain sum of money into the treasury in respect of the land upon which that sum is assessed. The city cannot elect to keep the land if it sees fit. It must sell again as soon as the time of redemption is past. Pub. Sts. *c.* 12, § 58. The land is still only a security to it for the money. And, as no one but the owner is entitled to insist on this sale, we do not see why, if they so agree, the city should not be at liberty to receive its taxes and charges from him without further trouble, on the footing of a payment, and why this should not, *ipso facto*, extinguish the statutory title after the two years have elapsed, as it would have extinguished it before; or, in other words, why a certificate of payment should not be as good as a deed.

The remaining steps are not so hard to take. If the demandant could have discharged the city's title by a payment accepted in redemption of the land, then the owner of any interest in the land could have done so. Pub. Sts. *c.* 12, § 57. And having in view the objects of the statute just referred to, without controverting any general doctrine as to payment by strangers, we think that, if the city is willing to permit a redemption by the owner, and the party to whom the premises were assessed presents himself as such, and claims and is allowed to redeem,

his payment shall have effect by way of redemption, whatever may prove to be the defects in his alleged title.

The result is, that the payment by the Corbitant Mills terminated all estate and interest of the city of Fall River in the demanded premises; and that the demandant was thereafter entitled to recover on the strength of his title alone, irrespective of the superior possessory right which he probably had as against the tenant, who had no rights at all.

The tenant's claim for improvements is disposed of by the finding of the court.                           *Exceptions overruled.*