## Southern Ry. Co. *v*. Jennings.

## (*Knoxville*. September Term, 1914.)

1. **EMINENT DOMAIN.** Appropriation of railroad right of way.. Action for damages. Limitation of actions.

Where a railroad company, instead of instituting condemnation proceedings, took a conveyance of land from the life tenant, the one-year period of limitations prescribed by Shannon's Code, sec. 1867, did not apply to an action brought by a remainderman to recover damages for the appropriation of such land; such section not applying where land is not taken in the exercise of the power of eminent domain. (*Post, pp.* 452,. 453.)

Code cited and construed: Sec. 1867 (S.).

2. **EMINENT DOMAIN.** "Condemnor." "Appropriator."

"Condemnor" and "appropriator" necessarily include, as parts of their meaning, one who subjects the lands of another; that is, in recognition that the lands are those of another than the condemnor, and that there is need that such be taken from such other and vested, as by way of compulsory sale, in the appropriator. (*Post, pp.* 454-456.)

Code cited and construed: Sec. 1844 (S.).

Cases cited and distinguished: Re Olean, 135 N. Y., 341; Re Yonkers, 117 N. Y., 564; Geneva v. Henson, 195 N. Y., 455; Commonwealth v. Bisby, 37 Kan., 253; San Jose v. Reed, 65 Cal., 242; San Jose v. Freyschlag, 56 Cal., 8; Langford v. United States, 101 U. S., 341.

3. **REMAINDERS.** Limitations. Commencement of period.

The seven-year statute of limitations will not run against the interest of a remainderman in land, during the existence of the life estate. (*Post, pp.* 456, 457.)

Cases cited and approved: Smith v. Cross, 125 Tenn.,. 160; Shortle v. Railroad, 131 Ind., 338; Webster v. Railroad, 78. Ohio, 90; Smith v. Railroad, 88 Tenn., 611.

4. EMINENT DOMAIN. Appropriation of land. Measure of damages. Railroad right of way.

Where a railroad company takes possession of land under a deed from the life tenant, the measure of damages recoverable by remaindermen for the company's appropriation of the land is the value of the land at the termination of the life estate rather than at the date of the taking. (*Post, pp.* 457, 458.)

FROM CLAIBORNE.

Appeal from the Criminal and Law Court of Claiborne County.—XEN HICKS, Judge.

L. D. SMITH, MONTGOMERY & MONTGOMERY and JOHN P. DAVIS, for appellant.

W. R. HENDERSON, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit was instituted by William Jennings to recover of the railway company damages for the appropriation of a strip of land originally occupied by its predecessor in title, the Morristown, Cumberland Gap & Ohio Railroad Company, as a right of way.

The company sued filed a plea setting forth that the land in question was taken by such predecessor under the power of eminent domain more than one year before the action was commenced, and that the right of action was barred.

Both the trial court and the court of civil appeals ruled against the company on this defense, and it seeks here a review by the writ of *certiorari*.

It appears that Jennings acquired title to the land in question under the will of his grandfather. This will devised to testator's son a life estate in the realty, with remainder over to the testator's grandsons, sons of the life tenant. William Jennings, one of the remaindermen, acquired the interests in remainder of his brothers.

In 1880 the life tenant undertook to convey by deed to the Morristown, Cumberland Gap & Ohio Railway Company a right of way for railroad purposes over the devised lands, and the company at once entered, constructed its track, and the same has been used ever since for railroad purposes.

The life tenant died in 1911, and the suit was brought shortly thereafter, November 8, 1911.

One of the methods prescribed by our statutes for compensation for the taking of private property by a railway company through the exercise of the power of eminent domain is when the company, without previous institution of condemnation proceedings, enters upon and takes possession of property without a contract with or the consent of the owner. In such event the owner is given the right to sue for damages for the taking. Code (Shannon), sec. 1867.

The statute of limitation prescribed as a bar to such action for damages is as follows:

"The owners of land shall, in such cases, commence proceedings within twelve months after the land has been actually taken possession of, and the work of the proposed internal improvement begun," etc.

The contention of the appellant railway company for error is that, when the company took possession of the strip of land in question for railroad purposes, it thereby appropriated the land as such, necessarily affecting the estate in remainder, and so far forth that the right of the owner of the remainder estate to sue for compensation began on the date of the taking and expired with the twelve months' period limited.

The fundamental error in this insistence we conceive to lie in its assumption that the company in respect to the land, at the time it was taken into possession by it, occupied the attitude of a condemnor pursuing the statutory right or mode. The land was originally taken by the company, not in the exercise of the granted power of eminent domain, but by virtue of a private contract with and conveyance from one who claimed to convey the entire title to and not a mere life estate in the right of way.

It is true that the conveyor was, in fact, only a tenant for life, but the company under his deed entered, claiming in nonrecognition and disregard of the title of the remaindermen. After so entering, the company must be taken to have held the land as its own.

A railway company may, as a person invested with the right of eminent domain, proceed in either of two ways: First, directly as a petitioner to have the land laid off and damages assessed; or, second, indirectly by entering and occupying, leaving the landowner to bring suit for damages, as above outlined.

Whether the one or the other mode of taking is pursued, it is the same power that is exercised and an equivalent legal act—that of an empowered condemnor, who "may take the real estate of individuals" (Code, sec. 1844) as a "party seeking to appropriate such land" (section 1845). "Condemnor" and "appropriator" necessarily include, as parts of their meaning, one who subjects the lands of another as such; that is, in recognition that the lands are those of another than the condemnor, and that there is need that such be taken from such other and vested, as by way of compulsory sale, in the appropriator.

In the case of *Re Olean,* the court of appeals of New York dealt with this question of the legal attitude of a condemnor, in that case a village which was endeavoring, in a street condemnation proceeding, to show a dedication of the land by the landowner to the village, FINCH, J., said:

"I do not see how the village of Olean can raise the question of a dedication to the public use in this proceeding, for its very existence and prosecution necessarily involves an admission of the landowner's right and an inquiry into his damages resulting from a necessary taking of that right. . . . The municipality waived any such claim, if it existed, by proceeding under the charter to condemn the landowner's right and to assess his damages for what was proposed to be taken from him. Manifestly the village conceded his right when it instituted a proceeding to take it away, and under a provision of the charter having no appli-

cation, except where there is an owner other than the
village, and whose title is to be divested. To say that
there is not such owner, and that the easement sought
to be condemned belongs to the municipal corporation
by the act of the owner, is to deprive the proceeding of
all foundation.'' 135 N. Y., 341, 32 N. E., 9, 17 L. R.
A., 640; *Re Yonkers,* 117 N. Y., 564, 23 N. E., 661;
*Geneva* v. *Henson,* 195 N. Y., 455, 88 N. E., 1104; *Commonwealth* v. *Bisby,* 37 Kan., 253, 15 Pac., 241; *San
Jose* v. *Reed,* 65 Cal., 242, 3 Pac., 806; *San Jose* v.
*Freyschlag,* 56 Cal., 8; *Langford* v. *United States,* 101
U. S., 341, 25 L. Ed., 1012.

The principle underlying the cases compels a holding that, having maintained during the period it held
the land the attitude of a claimant of the land as its
own, the appellant company cannot invoke the protection of a statute which limits the time within which
the owner may sue for compensation for a taking by
a condemnor, or have imposed upon the owner the burden of a statute of limitation incorporated in and as
a part of the eminent domain law, no reciprocal burden of which is to fall on the company, such as the
enforced recognition of the title as not being its own,
and of readiness to compensate the owner as involuntary vendor.

''The party seeking the condemnation concedes the
right to compensation and is always willing, as a matter of fact, to pay a certain sum.'' Lewis, Eminent
Domain, sec. 426.

Only the amount remains to be judicially ascertained, ordinarily.

Presumably the legislature fixed the short period of limitation of one year because of this legal attitude of the condemnor. That statute is not, in essence, one that looks to adverse possession.

The foundation of the company's holding was not any proceeding, or its equivalent, as above stated, to condemn or take under the statute, but a conveyance that was hostile to the right of plaintiff as remainderman. Manifestly, then, the company so claiming ownership can only, as against another title claimant, resort for repose to the seven years' statute of limitation relating to possession of realty, hostile in character.

That statute is not pleaded or relied on by the appellant company, nor could it be successfully, since it could not have run against the remaindermen during the existence of the life estate. *Smith* v. *Cross,* 125 Tenn. (17 Cates), 160, 140 S. W., 1060, and cases cited.

The appellant company relies upon the case of *Shortle* v. *Terre Haute & I. R. Co.,* 131 Ind., 338, 30 N. E., 1084, which was a proceeding instituted by remaindermen to have damages assessed for property taken by a railroad company. It was there held that, by force of an express statutory provision in Indiana, an intervening life estate did not interfere with the right of remaindermen to sue for damages or prevent the statute of limitation running against the latter. It is to be noted

that the railway company in that case entered in the right of a condemnor and not as a conveyee.

The appellee, Jennings, relies upon the case of *Webster* v. *Pittsburg, etc., R. Co.*, 78 Ohio, 90, 84 N. E., 592, 15 L. R. A. (N. S.), 1154, but in that case, also, the railroad company did not enter or hold under a deed; the court stating that "the railroad company took possession without contract and without appropriation;" and it was held that the tenancy for life prevented the statute's running against the remaindermen.

A case involving a taking and holding by a railway company of a right of way under a deed from a life tenant is that of *Smith* v. *Railway*, 88 Tenn. (4 Pickle), 611, 13 S. W., 128, where it was said that the possession by the railroad company would not be adverse to the remainderman until the termination of the life estate. The action there was by the remainderman to recover damages for the right of way taken.

We therefore hold that the appellant company cannot rely upon the one-year statute of limitation invoked by it.

Under another assignment of error, the railway company insists that the measure of the appellee's recovery is the value of the land as of the date of its predecessor's original entry thereon. The decision of this point is governed by what is said above in relation to the rights of the remanderman. The right of action of the remainderman accrued at the termination of the life estate, and the value of the land and the amount

of incidental damages could not be tested as of a date prior to the existence of the cause of action, and should be fixed as of the time that right arose.

Affirmed.