Kathleen Williams Campbell *et al. v.* Lewisburg & Northern R. R. Co. *et al.*

*(Nashville,* December Term, 1929.)

Opinion filed April 5, 1930.

J. M. Peebles and W. P. Cooper, for complainant.

Ed. T. Seay and Albert W. Stockell, for defendant.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought by three complainants, two of them minors, to set up a one-sixth interest in a tract of land near Nashville comprising 160 acres claimed in fee by the Louisville & Nashville Railroad Company and on which are located certain terminal yards of that Com-

pany, known as the Radnor Yards, which have been laid out and equipped at a cost of upwards of $1,500,000. The complainants sought to have their rights established and to have a partition of the land or a sale of the land for partition and division of the proceeds. In the alternative, and in the event the court thought they were not entitled to partition or sale for division of proceeds, the complainants asked for a decree for such damages as they might be entitled to under the facts of the case. The effect of the stipulation of counsel is to give complainants' bill the scope indicated.

The Louisville & Nashville Railroad Company denied that complainants had any interest in the land, but in the event the court held otherwise, the Railroad Company denied the right of the complainants to a sale for partition and division of the proceeds, and, by proper pleadings the Railroad Company sought to have any interest of complainants in the land set apart to them in kind out of that portion of the property involved upon which no improvements had been made and out of certain adjacent property. Bringing in new parties by cross-bill, the Railroad Company further sought redress on the covenants of the deed under which it claimed for any failure of its title. The answer of the Railroad Company specifically pleaded that the land in question was acquired and held by it for a public use and that if the complainants were entitled to any recovery, such recovery was limited to just compensation for any property of theirs taken.

An appropriate answer was filed to the cross-bill and the cause proceeded to issue and was tried on a stipulation. Other facts appearing will be brought out in the course of the discussion.

The chancellor decreed that the complainants had become the owners of a one-sixth interest in said 160 acres of land on the falling in of a preceding life estate but that they had no interest in the improvements that had been made; that they were entitled to have their interest .set apart to them in kind in that portion of said tract on which no improvements had been made, or a sale of such portion for partition and division of the proceeds, if said portion of the tract was not necessary for the reasonable future requirements of the Railroad Company for terminal purposes; that they were entitled to a decree for the value of their one-sixth interest, if it could not be set apart to them in kind out of the unimproved portion or if said unimproved portion could not be sold for partition and division of the proceeds.

It was further decreed that the Railroad Company was entitled to recover on the covenants of warranty in the deed to its predecessor in title, the Lewisburg & Northern Railroad Company—the grantors in said deed having been made defendants to the Railroad Company's cross-bill. The Lewisburg & Northern Railroad Company conveyed all its assets of every description to the Louisville & Nashville Railroad Company some years since and the former corporation need not be noticed hereinafter.

The chancellor referred the cause to the master to ascertain and report.

(1) Whether that portion of the 160-acre tract on which no improvements had been made was necessary to the reasonable future requirements of the Louisville & Nashville Railroad Company.

(2) If not so necessary, whether there should be a partition in kind of such unimproved property or a sale thereof for partition and division of proceeds.

(3) If no partition or sale for partition and division of proceeds, what sum would be just compensation for complainants' interest taken?

(4) The amount of damages .the Railroad Company would be entitled to for breach of the covenants of warranty in the deed to its predecessor.

Both parties appealed from the chancellor's decree and the first proposition of the Railroad Company is that the chancellor erred in decreeing that the complainants had any interest in the land.

The complainants claim title under the will of their ancestor, Enoch Ensley, who died testate in 1866. Melville Williams, the grandson of testator and grandfather of complainants, acquired the property here involved under a clause of the Ensley will, as follows:

. "I will and devise to my grandson Melville Williams during his life, and then to the heirs of his body by a legal marriage, and in the event of his death without such heirs, then to my residuary legatee and his heirs, $50,000 worth of property, etc., etc."

The property here in suit was vested in the said Melville Williams for life and then to the heirs of his body by legal marriage under proceedings in the Chancery Court of Davidson County based on the will of Enoch Ensley. The residuary legatee referred to in the language quoted from the will conveyed his interest to said Melville Williams.

Melville Williams had six children, Melville Williams, Jr., Robert N. Williams, G. Pillow Williams, Fount W. Williams, Mrs. Annie Williams Shannon, and Enoch Ensley Williams. Melville Williams, joined by his wife and all these children on September 11, 1911, conveyed this tract of land to the Lewisburg & Northern Railroad

Company and on October 1, 1915, the Lewisburg & Northern Railroad Company conveyed said land to the Louisville & Nashville Railroad Company. Melville Williams died November 12, 1927. Melville Williams, Jr., complainants' father, died September 30, 1927, a few weeks before his father. All the children of Melville Williams survived him except Melville Williams, Jr., the father of complainants.

The contention of the Railroad Company is that the devise to Melville Williams for life "and then to the heirs of his body by a legal marriage," should be construed as a devise to said Melville Williams for life and then to his *children*. Upon this premise, it is argued that, all the children of Melville Williams having joined in the deed to the Lewisburg & Northern Railroad Company, the entire estate in remainder thus passed.

Counsel refer to previous decisions of this court in which the words *heirs of the body* have been construed to mean *children* and they urge that in this case such construction is the more plausible by reason of the description of the remaindermen as "heirs of his body by a legal marriage."

We think, however, that this question has been foreclosed against the contention of counsel for the Railroad Company by previous decisions of this court involving this very will. The will came before Chancellor Cooper for construction and his opinion appears in 1 Cooper's Chancery Reports, 306. Referring to the clause of the will before us, the learned chancellor said:

"By the Code, 2008, it is provided: 'When a remainder is limited to the heirs, or to the heirs of the body, of a person to whom a life estate in the same premises is given, the persons who, on the termination of the life

estate, are heirs or heirs of the body of such tenant, shall take as purchasers by virtue of the remainder so limited to them.' The effect of this statutory provision was to do away with the rule in Shelly's case, and to make that a good contingent remainder to heirs or heirs of the body, which before would have only enlarged the life estate of the parent into a fee. The result on the particular devise is to limit the complainant Williams' interest in the property devised to a life estate, with a contingent remainder in fee to those persons who, at his death will answer the description of heirs of his body, whether born now or to be born hereafter.

"The devise over to the testator's residuary legatee, upon Melville Williams dying without heirs of his body, would at common law be too remote, being upon an indefinite failure of such heirs. The Code, however, 2009, changes this rule also. 'Every contingent limitation, in any deed or will, made to depend upon the dying of any person without . . . heirs of the body, . . . shall be made a limitation to take effect when such person dies without heirs . . . living at the time of his death or born to him within ten months thereafter, unless· the intention of such limitation be otherwise expressly or plainly declared on the face of the deed or will creating it.' No such intention being otherwise. declared in this will, it is clear the devise over to Enoch Ensley, Jr., would be good, if Williams left no heirs of his body living at his death. But the record shows that Enoch Ensley, Jr., has conveyed to Melville Williams the contingent interest thus devised to him. The effect of this conveyance is to vest the fee in Williams, subject to a contingent remainder in fee in the heirs of his body living at his death."

Upon appeal to this court the decree of the chancellor was affirmed in *Williams* v. *Williams,* 62 Tenn. (3 Baxt.), 55. Among other things in an opinion by Chief Justice NICHOLSON, this court said:

"It is not necessary to determine whether the language of this devise constitutes a valid executory devise to the residuary legatee named in the will, or whether, under the law, as it stood previous to the Act of 1851, carried into the Code as section 2008, the language would have given to the tenant for life an estate in fee simple, under the rule in Shelly's case. In either view, since the Act of 1851, Melville Williams would only take a life estate, and at his death his heirs, or the heirs of his body, would take as purchasers, by virtue of the remainder so limited to them. The contingent remainder, thus vested in the heirs of the body of Melville Williams, would go over to Enoch Ensley, Jr., the residuary legatee, in the event of the death of Melville Williams, without such heirs living at his death, under the Act of 1851, Code, section 2009. But Enoch Ensley, Jr., having conveyed his entire interest in the property to Melville Williams, the effect is to vest the fee in Melville Williams, subject to a contingent remainder, in fee, in the heirs of his body living at his death."

It seems that prior to the suit in the Chancery Court of Davidson County just referred to, an effort was made to have the will of Enoch Ensley construed by a bill in the Chancery Court of Shelby County. This case reached this court as appears from a decision in *Williams* v. *Williams,* 57 Tenn. (10 Heisk.), 566. This court held that the Chancery Court of Shelby County was without jurisdiction in the matter and that the chancellor should have dismissed the bill, but the learned judge delivering the opinion of this court proceeded, nevertheless, to con-

strue the clause of the will here involved, and gave to said clause the same meaning given thereto in the opinions of Chancellor Cooper and Judge Nicholson just quoted.

There seems to us little basis for the argument that Chancellor Cooper and this court meant anything, except what they said, when they announceed that the effect of the will of Enoch Ensley, together with the conveyance of the residuary legatee to Melville Williams, vested "the fee in Melville Williams, subject to a contingent remainder in fee in the heirs of his body living at his death."

█ Heirs of the body include grandchildren as well as children—lineal descendants. *Ward* v. *Saunders,* 35 Tenn. (3 Sneed), 386. If the language of the will designating the contingent remaindermen had been thought to indicate *children,* the discussion by Chancellor Cooper and by this court of section 2008 of the Code abolishing the rule in Shelly's case would have been entirely without point.

While, as pointed out by counsel, this court has at times construed the phrase heirs of the body to mean children, when such phrase was used by the testator and other language of the will indicated the phrase should be so construed, it would be wholly inadmissible to give such a meaning to the phrase appearing in an opinion of Chancellor COOPER or Judge NICHOLSON. Neither were given to loose expressions.

Moreover, the construction for which counsel contend, if the question were open, could not be reconciled with more recent decisions of this court. *Speight* v. *Askins,* 118 Tenn., 749; *Scruggs* v. *Mayberry,* 135 Tenn., 586; *Harwell* v. *Harwell,* 151 Tenn., 587.

█ It might be added that heirs of the body by legal marriage can mean little more than lawful heirs, which

is a redundancy. Lawful issues and bodily heirs mean the same thing. *Wynne* v. *Wynne,* 56 Tenn. (9 Heisk.), 308. No great importance seems to be attached to the use of the word lawful in the phrase lawful issue and such phrase doesn't confine issue to children. *Harrell* v. *Hagan,* 147 N. C., 111, 125 Am. St. Rep., 539; *Harris* v. *Loftus* (1899), 1 Ir. Rep., 491.

■ There has been much argument at the bar and in the briefs about partition of this land, as to whether there should be a partition in kind, or sale for partition and division of proceeds, and, if a partition in kind, how it should be effected. We do not go into this, for we think the case is not one for partition or for sale for partition and division of proceeds.

As the record comes to us, we may leave out of consideration the circumstance that only about one-half of the 160-acre tract is at this time actually occupied by the Railroad Company for terminal purposes with its tracks, switches, buildings, etc. The bill herein does not charge that the Railroad Company has acquired in this tract any more land than is necessary for its reasonable future needs. On this subject the answer and cross-bill of the Railroad Company says that the land was acquired upon the idea "that all of it was needed and would be used for railroad purposes above set forth. . . . And while not all of it is now occupied by railroad tracks, buildings, and other facilities, cross-complainants contemplate the use of the same in the extension and enlargement of its terminal facilities in Radnor Yards as the business of the Louisville & Nashville Railroad Company may require, or make necessary or proper." The answer to the cross-bill neither admits nor denies the averment quoted.

Chapter 70 of the Acts of 1911, authorizes a Railroad Company to acquire by purchase or condemnation such real estate as may be "necessary or proper" for "terminal facilities." The amount of land that may thus be taken for such purpose is not otherwise limited as in *White* v. *Railroad,* 101 Tenn., 95. The necessary or proper quantity of land is left in reasonable limits within the discretion of the Railroad Company to be exercised in good faith, having in mind not only present but prospective needs within a reasonable time. See 20 C. J., 634, 637.

■ Even as against another public service corporation, seeking land for another public use, this court is committed to the proposition that "there must be a liberal consideration of the future as well as the existing needs of a company whose land is sought to be appropriated, before it can be deprived of any portion thereof." *Railroad Co:* v. *Cemetery Co.,* 116 Tenn., 400; *Railroad* v. *Railway,* 116 Tenn., 500.

In the state of the pleadings, in view of the allegations of the cross-bill not denied, and, bearing in mind the rule just above stated, we think this case must be determined on the assumption that the tract of land involved is not more than the Railroad Company requires for its present and reasonable future uses for terminal purposes.

■ This being so, neither a partition in kind nor a sale for partition and division of proceeds could be decreed. The right to have partition of an estate is conferred on persons "holding and being in possession thereof." Thompson's-Shannon's Code, section 5010. And the right to a sale for partition and division of the proceeds, in cases enumerated, is conferred on persons entitled to partition. Thompson's-Shannon's Code, section 5042.

The word *and* in section 5010 is construed to mean *or* in *Bierce* v. *James,* 87 Tenn., 538. That is, so as to make the statute include those holding the estate as remaindermen and not actually in possession. But partition is not available where there is an adverse inconsistent possession. *Bierce* v. *James, supra.*

The court cannot partition property nor sell it for partition and division of proceeds while the title is in dispute. Chambliss' Gibson's Suits in Chancery, section 1058. Under chapter 77 of the Acts of 1877, and otherwise, the chancery court has power to settle the title to land, but the title must be settled and unless possession can be decreed to complainant, or the land freed at least from inconsistent adverse possession, there can be no partition or sale for partition and division of the proceeds.

The complainants in this case cannot recover possession of the land nor can they free it from an inconsistent adverse possession. *Saunders* v. *Railroad,* 101 Tenn., 206, is conclusive. The plaintiff there brought an action of ejectment against defendant, a chartered railroad company, which had bought the land in question from one claiming to have title thereto. The defendant was occupying and using the land for purposes contemplated by its charter. It turned out that the title of the defendant's grantor was bad. The court said that the defendant's "possession cannot be disturbed by an action of ejectment, though the defendant's title be bad on account of the fact that the former company failed to acquire title to this right of way by condemnation or otherwise. At the most, the plaintiffs are entitled to compensation and damages only, and not to a recovery of the land."

To like effect, holding that the statutory remedies for the recovery of damages, Thompson's-Shannon's Code, sections 1861, 1866, given to parties whose land has been occupied for purposes of internal improvement by public service corporations, are exclusive, see *Colcough* v. *Railroad,* 39 Tenn. (2 Head), 171; *Doty* v. *Telephone & Telegraph Co.,* 123 Tenn., 329; *Railroad* v. *Transportation Co.,* 128 Tenn., 277; *Armstrong* v. *Illinois Central R. Co.,* 153 Tenn., 283.

The reason for this rule is that the law authorizes such corporations to take property to effectuate public purposes for which they were chartered and in taking such property such corporations commit no unlawful act, which may be redressed by ordinary remedies. *Colcough* v. *Railroad, supra.*

█ It follows that the complainants herein must be remitted to the recovery of such damages as constitute just compensation for their property taken. The one year statute of limitations, Thompson's-Shannon's Code, section 1867, applicable to suit by those whose land has been taken possession of by public service corporations, was pleaded in the court below. This plea was overruled by the chancellor and no exception is taken to this action on his part. This course is doubtless well advised. In *Southern Railway Co.* v. *Jennings,* 130 Tenn., 450, it was held that section 1867 did not run against a remainderman until the life estate had fallen in where the Railway Company had taken possession under a deed of the life tenant. To this extent *Southern Railway Co.* v. *Jennings,* was not weakened by *Armstrong* v. *Illinois Central R. Co.,* 153 Tenn., 283, and the holding certainly is sound as to contingent remaindermen.

██ The question then arises as to the measure of damages to which the complainants are entitled herein. Are they entitled to one-sixth of the value of the land with the improvements or to one-sixth of the value of the land without the improvements? It seems to be settled by *Southern Railway Co.* v. *Jennings, supra,* and *Chambers* v. *Railroad,* 130 Tenn., 459, that the damages should be assessed, in a case like this, as of the date of the death of the life tenant.

In *Southern Railway Co.* v. *Pouder,* 141 Tenn., 197, the Railway Company supposed it had title to a parcel of land in Johnson City and erected a freight depot thereupon. Later certain parties sued in ejectment for the recovery of said land and the Railway Company defended in ejectment and the claimants established their title. The Railway Company then proceeded to condemn the land and the question here presented arose in that case. The court said:

"The effort of defendants in this suit is to recover the value of the improvements placed on the land by the railway company, upon the theory that the latter was a trespasser. . . . The great weight of authority both in England and America is to the contrary, and it is generally held that the measure of damages to which the owner of land is entitled under such circumstances is the value thereof without the improvements. It is usually so ruled, although the condemnor enters without color of title."

The conclusion reached in *Southern Railway Co.* v. *Pouder, supra,* was well supported by authorities cited. Undertaking to summarize some of the reasons for the result given in the various cases referred to this court continued:

"It is said that the compensation to which the owner is entitled as against an enterer possessed of the power (misprinted forum) of eminent domain is merely just compensation for the loss and injury he has sustained; that the improvements placed upon the land are dedicated to public uses and not to the use and benefit of the freehold; that such improvements are never designed to be incorporated with the soil, except for a purpose attending the possession; and that in proceedings to obtain a legal right to occupy the land there would be no sense in compelling a condemnor to pay for his own property. In other words, such improvements are not built to improve the land, or to enhance its ordinary utility, but to be used as a part of an easement for public purposes, entirely independent of the ordinary uses of the ground."

It is attempted to distinguish the case before us from *Southern Railway Co.* v. *Pouder,* in various ways, but we think the distinctions undertaken are not well made.

It is said that in the present case the defendant Railroad Company claimed the fee in the land and that the improvements made were intended to become a part of the land. This was likewise true in *Southern Railway Co.* v. *Pouder.* The statement in that case that such improvements were not built to improve the land but to be used as part of an easement for public purposes was merely the statement of the reasoning of one of the cases cited. The court did not intend to be understood as saying that the Southern Railway Company in that case was only claiming an easement.

Regardless of whether the public service corporation making such improvements owns the fee or merely an easement, the improvements are not designed to be incorporated with the soil except for the public use.

 The decisions apply the rule stated in jurisdictions where the expropriator owns the fee in the land as well as in cases where only an easement is acquired. Note, 34 A. L. R., 1102.

In the statement in *Hyden* v. *The State,* 136 Tenn., 294, that a railroad track laid along a right-of-way was a part of the freehold it is meant that the railroad track was a part of the right-of-way, not of the fee. It was accordingly held that one who severed bond wire that was bradded to the rails was guilty of trespass and not of larceny.

An attempt is made to distinguish the case of *Southern Railway Co.* v. *Pouder,* on the idea that there were elements of estoppel therein not here appearing. The previous decision, however, did not rest on estoppel. Some other differentiations are undertaken, which we do not follow and do not find it worth while to discuss.

This particular question has been considered in a number of recent cases. There is a lucid discussion of the matter by the New York Court of Appeals in *N. Y. O. & W. R. Co.* v. *Livingston,* 238 N. W., 300, 34 A. L. R., 1078. This case is fully annotated in 34 A. L. R., 1082, et seq., and all the modern decisions appear to be in accord with the result reached in *Southern Railway Co.* v. *Pouder, supra,* and we must adhere to that result.

 Thompson's-Shannon's Code, section 1866, appears to be somewhat unique. It is as follows:

"If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary

way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.''

In view of this section, although an expropriator takes possession of the land, occupying it for purposes of internal improvement, without condemnation proceedings or without color of title, the landowner's remedy therein provided is exclusive. In other jurisdictions, if an expropriator takes possession of the land in such manner, ejectment or other remedies would be available to the landowner as against a private person.

In Tennessee the matter then comes down to this. Section 21 of Article I of the Constitution provides ''that no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor.'' Under our decisions, just compensation can only be obtained as provided by our statutes. No matter how possession of the land is acquired by the expropriator, if occupied for ''purposes of internal improvement,'' the statutory remedies alone may be employed, and just compensation alone may be recovered. We are unable to think that just compensation to these complainants for their land taken would include one-sixth of the value of the extensive improvements made on the property by the Railroad Company.

The chancellor decreed that the Railroad Company was entitled to recover on the covenant of warranty as against the grantors in the deed to the Lewisburg & Northern Railroad Company and as against the representatives of such of the grantors as were dead one-sixth of the purchase price paid for the land. Since Melville Williams was entitled to convey the life estate, no one

could call on the Railroad Company for mesne profits and it, therefore, was only entitled to interest on its recovery from the date of eviction.

Complaints are made of this holding of the chancellor, only one of which, however, need be considered. The chancellor properly held that the obligation of the covenant of warranty was a joint obligation of the grantors of the deed to the Lewisburg & Northern Railroad Company. *Watts* v. *Ramsey,* 156 Tenn., 463. There were no words of severance in the deed, no distinct interests conveyed, and *Galloway-Pease Co.* v. *Sabin,* 130 Tenn., 575, is not in point.

It is said for the grantors, however, that one-sixth of the value of the life estate of Melville Williams in the land should have been deducted from the Railroad Company's recovery, and this is correct.

As in *Box Company* v. *Ferguson,* 124 Tenn., 433, the cross-complainant is asserting a legal demand against cross-defendants, that is to say, seeking damages for the breach of the covenant of warranty and the rulings of this court on such a demand asserted at law must control. The cross-action could not be treated as one for rescission, as in *Curtis* v. *Brannon,* 98 Tenn., 153. A restoration of the land to the complainants could not be decreed, since the land is devoted to a public use. Where a deed undertakes to convey the entire estate in fee but in fact conveys only a life estate, in an action at law upon the covenants of seizin and warranty, the purchaser is entitled to recover the difference between the value of the life estate and the fee. *Recohs* v. *Younglove,* 67 Tenn. (8 Baxt.), 385. This has been approved in *Curtis* v. *Brannon,* and in *North* v. *Brittain,* 154 Tenn., 661. Such indeed is the general rule. 7 R. C. L., 1170, 1175.

An effort is made to distinguish *Recohs* v. *Younglove,* on the idea that it was a suit upon the covenant of seizin and the cross-bill is a suit upon the covenant of warranty. As a matter of fact, *Recohs* v. *Younglove,* was a suit on both covenants. This is immaterial, however, for upon facts like those before us, the measure of damages is the same upon a breach of either covenant. *North* v. *Brittain, supra;* 7 R. C. L., 1170, 1175.

Recapitulating, the complainants are entitled to recover from the Railroad Company the value of their one-sixth interest in the 160-acre tract of land as of the date of the death of Melville Williams. The value of the land will be estimated as if taken on that date and before it was devoted to the public use. It does not seem to us that the determination of the value indicated will involve unusual difficulties. In computing incidental damages, proof is easily obtainable showing the depreciation of land by reason of the location of railroads, switchyards, and the like. So it should not be difficult to show an appreciation in the value of land, if any there was, leaving out of consideration the railroads, switchyards, and the like, and treating such improvements as never having been made. This, it seems to us, will give to the complainants the just compensation which they are guaranteed under the Constitution.

The recovery of the Railroad Company on its covenant of warranty will be reduced by the value of the life estate of Melville Williams in one-sixth of the 160-acre tract of land.

Thus modified, the decree of the chancellor is affirmed and the cause remanded for further proceedings. The costs of appeal will be divided and the costs below taxed by the chancellor.

NOTE:—It should perhaps be added that in *Parker* v. *Railroad Co.*, 81 Tenn. (13 Lea), 669; *McNail* v. *Paducah, etc., R. Co.*, 3 Shan. Cas., 580, and *White* v. *Nashville & Northwestern R. Co.*, 54 Tenn. (7 Heisk.), 518, where injunctions were awarded to prevent the use of rights-of-way until compensation was paid or secured, defendant railroad companies were insolvent. In *Railway & Light Co.* v. *O'Fallon*, 130 Tenn., 270, and *Tuggle* v. *Southern Railway Co.*, 140 Tenn., 275, it was held that the threatened entry of expropriators, without condemnation proceedings, might be enjoined until compensation was secured or paid. The design of these judgments was only to protect the landowner's remedies for compensation, not to give him new rights.