# EAST TENNESSEE & W. N. C. R. CO. v. GOUGE et al.
## —203 S. W. (2d) 170.

Petition for Certiorari denied by Supreme Court, April 12, 1947.

Rehearing denied June 26, 1947.

Cox, Taylor, Eppes & Miller, of Johnson City, and Roy C. Nelson, of Elizabethton, for plaintiff in error.

Guinn & Mitchell, of Johnson City, for defendants in error.

BURNETT, J. This is a suit by Gouge and wife against the railroad company for land taken and damages to land not taken, including a spring thereon, by the railroad

in widening their right of way or straightening out a curve in their road bed.

The matter was submitted to a jury who returned a verdict of $1,200 in favor of Gouge and wife. On a motion for a new trial this verdict was reduced to $600. It is from this judgment that the railroad appeals.

As seen from the plaintiff's viewpoint the railroad, in straightening a curve in their tracks, took a strip of land 38 feet wide by 200 feet long or about 1/7 of an acre. In doing this work the railroad made a large fill on this portion of their land and put a drain pipe through their fill which emptied surface water on other land of the plaintiffs and as a result a spring was destroyed, i.e , it was made very muddy in rainy weather and a soapy skim was caused on the water at other times. By taking this land and making this fill a building site of the plaintiffs was destroyed. All of the land taken, including the fill, was well within 100 feet of the center line of the railroad. The maximum distance from the center line was 68 feet.

█ All the foregoing facts are sharply controverted. This of course constituted a question for the jury. They have passed thereon and we cannot interfere therewith because there was competent credible testimony both ways on these fact questions.

The railroad filed four pleas to the declaration, to-wit: (1) General issue, (2) special plea averring a charter right to "a space of 100 feet on each side of the center of said road" and that 'it had done nothing "outside of its said 200 feet right of way," (3) the three year statute of limitations, (4) the twenty year statute of limitations.  .

The plaintiffs filed replications to the various pleas. In their replication to the 2nd plea they say that subsequent to the granting of the charter "the defendant by deed made and entered into on the 14th day of September,

1875, between it and their predecessors in title, Caswell G. Taylor of Carter County, Tennessee, conveyed to said defendant a right of way'' of 30 feet on either side of said road, ''and the defendant is estopped to insist to the contrary.''

Oyer being craved of the deed it was produced and made a part of the replication. The deed is dated September 14, 1875, and was recorded on September 17, 1875. The deed was as alleged in the replication and contained the following clause, to-wit:

''But it is distinctly understood and agreed upon that upon this conveyance is to be a nullity unless said East Tennessee and Western North Carolina Railroad is built equipped and operated from Johnson City, Washington County, Tennessee, to the Doe River Cove within Carter County, Tennessee, within two years from the 10th day of September, 1875.''

The 2nd replication in its final form was demurred to ''upon the ground that there is no averment therein that the railroad was built . . ., within two years . . . as provided by said deed.'' This demurrer was overruled by the trial court.

A rejoinder was filed by the railroad to the 2nd replication averring ''that said railroad was not built . . . within two years . . . as required by the alleged deed . . . wherefore, defendant says that said alleged deed is a nullity . . . and that defendant's right of way is governed exclusively by the provision of its charter . . .''

On motion of the plaintiff this rejoinder was stricken.

The section of the charter relied on by the railroad is as follows:

''In the absence of any contract with the said company in relation to lands through which the said road may pass,

signed by the owner thereof, or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner, it shall be presumed that the land upon which the said road may be constructed, together with a space of one hundred feet on each side of the centre of said road, has been granted to the company by the owner thereof, and the said company shall have good right and title thereto, and shall have, hold and enjoy the same as long as the same be used only for the purposes of said road, and no longer, unless the persons owning the said land at the time part of the road which may be on said land was finished, or those claiming under him, her or them, shall apply for an assessment for the value of the said land, as herein before directed, within five years next after that part of said road was finished. And in case the said owners or those claiming under them shall not apply for such assessment within five years next after the said part was finished, they shall be forever barred from recovering the said land or having any assessment or compensation therefor; PROVIDED, that nothing herein contained shall affect the rights of femes covert or infants until two years after the removal of their respective disabilities. And if any person shall intrude upon the said rail road or any part thereof, by any manner or use thereof, or the rights and privileges connected therewith, without the permission or contrary to the will of said company, they shall forthwith forfeit to the said company, all the vehicles that may be so intruded on said road, and the same may be recovered by suit at law; and the persons so intruding may also be indicted for misdemeanor, and on conviction, fined and imprisoned by any court of competent jurisdiction.''

It is shown by the evidence that the railroad in question was not constructed until 1881 or about six years

after the deed was effective. The record is silent as to what if anything any party ever did after the deed was executed and recorded. The railroad had constructive knowledge (at least) of the deed from the time of the recordation in 1875. According to the proof they or at least the present officers of the railroad did not have actual knowledge of the deed until after the work on the road herein complained of was completed.

█ The deed here in question granted a right of way to the railroad through the lands of Caswell Taylor in consideration of one dollar and for "the benefit conferred upon the public as well as upon said C. C. Taylor." The forfeiture provision in the habendum clause above quoted is not self-executing. The language of the deed clearly creates a condition subsequent. The specified consequence of the breach, namely, that the title "is to be a nullity" unless the road is built within two years, stamps it as such. The language used is tantamount to saying "shall revert to" the grantor unless these things are done within the time.

"The term 'condition subsequent' denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised." Am. Law Inst. Restatement, Property, Vol. 1, section 24.

█ The law is stated by Mr. Graves in his notes on Real Property, section 277, as follows:

"Assuming that there has been a breach of a valid condition subsequent, the estate vested in the grantee does not cease in him, and revest in the grantor ipso facto, but remained unimpaired in the grantee until entry, or its

equivalent, by the grantor or his heirs. For the grantor or his heirs may waive the right to enforce the forfeiture; and though there has been no express waiver, and the estate of the grantee is still liable to forfeiture, the law, in favor of the vested estate, will not permit its destruction until the right to forfeit has been exercised.'' See note to Cross v. Carson, 8 Blackf., Ind., 138, 44 Am. Dec. 754; Chalker v. Chalker, 1 Conn. 79, 6 Am. Dec. 206; Spear v. Fuller, 8 N. H. 174, 28 Am. Dec. 391; Thompson v. Thompson, 9 Ind. 323, 68 Am. Dec. 638; O'Brien v. Wagner, 94 Mo. 93, 7 S. W. 19, 4 Am. St. Rep. 362; Preston v. Bosworth, 153 Ind. 458, 55 N. E. 224, 74 Am. St. Rep. 313; Hubbard v. Hubbard, 97 Mass. 188, 93 Am. Dec. 75; Langley v. Chapin, 134 Mass. 82; Schulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551; Little Falls, etc., Co. v. Mahan, 69 Minn. 253, 72 N. W. 69; Bonniwell v. Madison, 107 Iowa 85, 77 N. W. 530; Robinson v. Ingram, 126 N. C. 327, 35 S. E 612; Houston, etc., R. Co. v. Ennis-Calvert Compress Co., 23 Tex. Civ. App. 441, 56 S. W. 367; Lewis v. Lewis, 74 Conn. 630, 51 A. 854, 92 Am. St. Rep. 240.

This note (above quoted) was written many years ago but is still the rule. ''If the right of entry is never exercised, the estate remains as before. The grantee still has possession with all the advantages which by the common law belong to possession.'' 19 Am. Jur., section 87, page 549.

█ There is no word or indication herein that Taylor or his successors ever did anything to exercise their right of entry. The railroad was built within six years.

The railroad takes the position that the condition in this deed is a ''conditional limitation'' and that therefore by the failure to build the road in two years the condition became or was self-executing and the land reverted to

Taylor without any act on his part. If it was a "conditional limitation" their argument would be sound.

"The basic difference between such estate ('conditional limitation') and an estate upon condition subsequent is ascertained by the fact that in the estate upon condition subsequent the entire interest has passed from the creator to return upon the happening of events, while in the case of the 'conditional limitation' an interest somewhat less in concept has passed from the grantor, which interest contains within itself the basis for its expiration." 19 Am. Jur., section 67, page 531.

Assignment of error No. 1 is predicated on the trial court's failure to dismiss the suit because the uncontradicted evidence showed the work of the railroad to have been started in July 1944 and the suit not to have been instituted until September 1945. It is said that plaintiff's cause of "action is barred by the twelve months' limitation statute set forth in section 3132 of Williams Tennessee Code."

The question was not raised in the trial court. The code section above referred to was not plead nor relied on there.

The reasoning on which this assignment is based is that Code, section 3109 et seq., gives the railroad the right to take real estate for the purposes of building its road. The sections immediately following prescribe the manner it is to be taken and compensated for and section 3132 prescribes a twelve months limitation for an action for this taking. It is said that the remedy of the landowner must come under these Code sections and that his remedy is exclusive. It is argued that the limitation statute now for the first time plead is not strictly "a statute of limitations, which must be specifically pleaded, but is an absolute bar."

■ It is elementary, and goes without saying, that under ordinary proceedings good pleading demands that a special plea of a limitation statute be plead in the trial court. If this is not done it cannot be first plead in the appellate court. Higgins & Crownover, sections 558, 567. This being true the one-year limitation statute (Code, · section 3132) cannot now be plead as a bar to this action unless this statute be treated not as a limitation statute but as part of an act giving an exclusive right and remedy. If this latter construction of the act is correct the mere showing by the pleadings or proof that the suit was brought more than one year after the beginning of the work on the railroad (here complained of) would bar the action and no plea relying on the statute would be necessary.

It must be borne in mind that the railroad herein made no effort or attempt to enter this land by way of the provisions of the statute. The railroad simply took the property and committed the acts complained of as a result of this taking. Their reason for this method of procedure being that they thought they had a right of way far exceeding what they took. Legally they may proceed as they did. Having thus taken the land or having proceeded under the terms of the statutes in question (Code, sections 3109-3132) the land owners' rights are prescribed by Code, section 3131, as follows:

"If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; *or he may sue for damages in the ordinary way,* in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the

trial of an appeal from the return of a jury of inquest.'' (Emphasis ours.)

After quoting the Code section last above quoted the Supreme Court of this State in Duck River, etc., R. Co. v. Cochran, 71 Tenn. 478, 480, said:

''The latter clause of this section leaves no doubt as to the right of the owner to bring an action in the ordinary way, which can mean nothing else than an action of trespass or an action upon the facts of the case to recover the value of the land and the damages.

''The decisions referred to holding the statutory remedy exclusive were made upon cases previously arising under special charters, and could not have been made in reference to the foregoing section of the Code.''

In Southern Ry. Co. v. Jennings, 130 Tenn. 450, 452, 171 S. W. 82, 83, the Supreme Court said:

''One of the methods prescribed by our statutes for compensation for the taking of private property by a railroad company through the exercise of the power of eminent domain is when the company, without previous institution of condemnation proceedings, enters upon and takes possession of property without a contract with or the consent of the owner. In such event the owner is given the right to sue for damages for the taking.''

The court in the Jennings case speaks of the statute (Code, section 3132) as a statute of limitations ''prescribed as a bar to such action for damages.''

'' 'The party seeking the condemnation concedes the right to compensation and is always willing, as a matter of fact, to pay a certain sum.' Lewis, Eminent Domain, section 426.

''Only the amount remains to be judicially ascertained, ordinarily. Presumably the Legislature fixed the short

period of limitation of one year because of this legal attitude of the condemnor. . . .

"The foundation of the company's holding was not any proceeding, or its equivalent, as above stated, to condemn or take under the statute, . . ." (Southern Ry. Co. v. Jennings, supra [130 Tenn. 450, 171 S. W. 83], but simply an entry and taking without contract or consent.

■ Our conclusion therefore is that since under the facts of this case this taking and resulting damage was not under the statute creating the right of action the limitation of the remedy is not "a limitation of the right."

Several assignments are directed to isolated sentences of the charge to the jury. When the charge is considered as a whole these do not constitute reversible error.

For the reasons herein set forth we think the case should be affirmed. The costs will be taxed against the railroad.

Hale and McAmis, JJ., concur.